Statement of the Case.
MONROE, J.
Plaintiffs, as members of a planting partnership, brought this suit making certain demands against defendant, their copartner, who filed an exception of “no cause of action,” based upon the ground that, with respect to the matters complained of, plaintiffs are entitled to no relief save on a demand for a full settlement of the partnership. The exception-having been overruled, defendant answered, and, after a trial on the-merits, there was judgment, predicated upon the theory that the partnership had been dissolved by a seizure (which will be referred to hereafter), and condemning defendant in certain specific amounts. From the judgment so rendered, defendant appealed to the Court of Appeal, where the judgment was set aside, the exception of no cause of action maintained, and the suit dismissed. On plaintiff’s application to this court, the judgment of the-Court of Appeal was set aside. It was held that the petition discloses a cause of action, (being, in effect, a demand for a full settlement of the partnership), and the case was. *736 remanded, to the Court of Appeal (Borah et al. v. O’Niell, 116 La. 672, 41 South. 29), which tribunal, in turn, remanded it to the ■district court to hear evidence with regard to matters occurring after, as well as before, the seizure. Plaintiffs having made an unsuccessful application to this court for the reversal of the judgment of the Court of Appeal, that judgment was duly executed, and, .after another trial, in accordance therewith, the district court rendered the judgment from which defendant prosecutes the present appeal, which appeal plaintiffs have answered, praying that the judgment be amended.
For a proper understanding of the case, the facts disclosed by the record are more specifically stated as follows, to wit: On January 14, 1901, O’Niell (defendant) and Borah (plaintiff) bought the St. Mary plantation, with mules, carts, etc., for $12,000, of which $5,000 was paid in cash, and the balance in five notes •of $1,400 each, secured by mortgage, and payable in from one to five years, with interest, .and attorney’s fees in case of suit, which notes, somewhat later and at the suggestion ■of Borah, were purchased by John A. Baldwin, Jr. On the day upon which they made their purchase, O’Niell and Borah sold to Landen (the other plaintiff) an undivided ■one-third interest in the property acquired by them, for $4,000, of which one-third was paid in cash, and the balance by Landen’s assumption, in solido with’ them, of one-third ■of the debt represented by the notes which they had given to their vendor. It was part ■of this arrangement that O’Niell, Landen, and Borah were to operate the plantation so ■acquired as planting partners, with Landen as manager; and, carrying that agreement into effect, the partners borrowed $2,000 from the St. Mary Bank, upon their note, secured by pledge of the prospective crop, and proceeded to make the crop of 1901. In September of that year, O’Niell became indebted to Borah, outside of the partnership, | in the sum of $684.80, for which amount he gave a note, secured by mortgage on his one-third interest in the plantation, and made payable, with interest, and with attorney’s fees in case of suit, on January 1, 1902.
The crop of 1901 about paid expenses, and the planting operations of 1902 were conducted on the same basis (i. e., with money borrowed on pledge of the prospective crop) and showed a profit of about $1,800; but a portion of the amount so realized was paid to one Swinson, for drainage work, and the balance, with the exception of $60 (or $6), was expended in the purchase of mules, and on February 7, 1903, other mules were purchased, for the price of which a note for $720 was given, signed by the three partners, jointly and severally, dated June 1,1903, and made payable January 1,1904, with interest at 8 per cent, (from February 7th), and with 10 per cent, as attorney’s fee in case of suit. Early in the year, however (long before the giving of the note thus mentioned), Landen and Borah had called on O’Niell to advance money for plantation purposes, and O’Niell had answered that he was willing to join with them, as in the previous years, by giving a note, secured by crop lien, but that he was unwilling to make advances himself, and plaintiffs, not satisfied with his offer, had made some advances themselves, and had had their note for $1,000 discounted, and the proceeds placed to the credit of the bank account of the firm. On May 12,1903, also, Borah had obtained an order for the issuance of executory process on O’Niell’s note for $684.80, directing the sheriff to seize and sell the latter’s one-third interest in the plantation, and he and Landen, on June 3, 1903, transferred a balance of, say, $546, then in bank, from the account of the firm to the credit of an account opened, in the name of Landen & Borah. Within the delay allowed by law, O’Niell appealed, suspensively, from the order of seizure and sale, and perfected his appeal.
*738 It may be here remarked that it does not very clearly appear why the money needed for planting operations in 1903 could not have been obtained, as it had been obtained in 1901 and 1902, nor does it appear that Borah made any demand on O’Niell for the payment of the $684.80 before proceeding in court to enforce such payment.
Though the order of seizure and sale was thus suspended by appeal, the planting operations were continued by Landen & Borah and the sheriff, and those three discounted a note of $2,500 which they secured by a lien on the growing crop, and, from the proceeds of which Landen & Borah reimbursed themselves the money which they, personally, had advanced.
It was while matters were in that condition that the “mule” note for $720 was sent to, and signed by, O’Niell. More money still was needed, however, for the crop of 1903, and it was furnished by Landen & Borah; the result of the year’s operations being a heavy loss, which was borne by them. In February, 1904, the situation remained unchanged; that is to say, the order of seizure and sale being suspended by appeal and the plantation being, nevertheless, operated by Landen, Borah, and the sheriff (acting through Landen as keeper, plaintiffs brought this suit, alleging and praying (inter alia) as follows, to wit:
“That at this time [referring to May 12, 1903] the interest of the said O’Niell * * * was seized * * * under a certain executory process, * * * and there being no funds available at the time for the purpose of carrying on said planting operations, your petitioners, joined by the sheriff, who then had the one-third of said O’Niell under seizure, executed, in favor of the St. Mary Bank, * * • a pledge upon the crop then being grown; and your petitioners, solidarity, guaranteeing the payment of the $2,500 represented by said pledge note, secured advances with which to finish cultivating and harvesting said crop, and one of your petitioners, John A. Landen (having been appointed as ' keeper of the interest seized by said sheriff and instructed as such to go on with said crop), finished cultivating and harvesting the same at an additional cost of $2,553.60; that the note thus given and secured by said pledge was paid after its maturity by one of your petitioners, Charles F. Borah. * * * Your petitioners show that, of the amount expended up to the seizure of May 12, 1903, to wit, $2,110.79 or thereabouts, the said C. A. O’Niell has not paid any part; « * * that, after the seizure, there were further expenses incurred, up to December 10, 1903, * * * in the sum of $2,553.50; that this amount has been paid by your petitioners * * * ; but that the one-third which would otherwise be due by said O’Niell should be taxed as costs, and paid by preference out of the sale of the plantation, when sold and however sold, and they reserve the right to have the same so taxed, or to claim the same in the future litigation, as the expense is still going on and will so continue until the property seized is sold and the partnership finally dissolved and liquidated * * * ; that the mules purchased * * * were settled for by a note, drawn, in solido, by C. A. O’Niell, John A. Landen, and C. F. Borah [bearing date, as we have seen, June 1, 1903] * * * ; that these mules were purchased for the purpose of carrying on farming operations, for the year 1903, on said plantation, and that the note, as executed by your petitioners, with the said C. A. O’Niell, was due, one-third by each, and that, petitioners having paid the said note the said O’Niell is due one-third of the same, * * * with 8% per annum interest * * * and 10% attorney’s fees. Petitioners further aver that the partnership existing between them should be dissolved and liquidated, * * * and * * * your petitioners are entitled to have the partnership dissolved and liquidated. They aver that, in dissolving this partnership and adjusting the accounts, your honor should direct the manner in which the proceeds realized from the sale of the crop, grown during the past year, should be credited, and after so directing the credits from said crop, then your petitioners should have * * * one-third of whatever may have been expended since the said seizure taxed as costs of court, in the suit of Charles F. Borah vs. Charles A. O’Niell, as whatever indebtedness has been incurred since the seizure has been incurred by the sheriff, by operation of law, and that, while the same has been paid by * * * C. F. Borah, and is due by C. A. O’Niell, the same should be taxed as costs.
“Wherefore petitioners pray * * * for a judgment decreeing the dissolution of the partnership existing between them and the said C. A. O’Niell, * * * and * * * for judgment against the said C. A. O’Niell for the full sum of $703.59, it being one-third of the amount advanced and which is due by the said C. A. O’Niell for amounts expended in raising the crop, up to the date of the seizure of his interest in said property, with 5% per annum interest thereon, from May 12, 1Ó03. Petitioners further pray for judgment, jointly, in their favor * • * for one-third of the amount ex *740 pended for mules, to wit, $257.65, with 8% per annum interest thereon from January 1, 1904, and 10% attorney’s fees, or, in the event that the court should fail to find that these specific amounts are due, then for judgment for whatever amount the court may find to be due your petitioners by the said C. A. O’Niell, after directing the manner in which the proceeds of the sale of the said crop should be credited. They further pray that the right of the plaintiffs herein be reserved to demand one-third of all amounts expended since the seizure of the interest of the said O. A. O’Niell, and to have one-third of the same taxed as costs, in said executory process, upon the termination thereof. And they further pray for such other and further remedy and relief as the nature of the case may require and law and equity permit.”
To the demand so made, O’Niell (originally) answered, in substance: That the plantation had been operated, in 1901 and 1902, upon advances obtained by pledging the crop, and that the same course might have been pursued in 1903, but that plaintiffs, particularly Borah, declined his offer to that effect, and that Borah and Landen were conspiring to bring the partnership to an end and take over the plantation and business for their own account; that “the said firm of O’Niell, Landen & Borah, and its operations, were • suspended by said Landen and Borah, without knowledge or notice to respondent, and its place taken by a new firm called ‘Landen & Borah,’ who carried on in 1903 the business which had been carried on by O’Niell, Landen & Borah theretofore. * * * That‘he proposed to have the note held by C. E. Borah, and secured by mortgage * * * paid or taken up, but that the said Borah has not insisted upon this, and suggested that the same remain in his hands. * * * That, without warning or demand, the said Borah did, on or about the 12th day of May, 1903, cause executory process to issue * * * on said note, and that, on the day following, * * * at the request of your respondent, one Matthew Bell agreed to take up said note for your respondent but that said Borah told the said Bell that, if he took up said note, he (Bell) would have to put up $1,000 additionally for advances, otherwise he, the said Borah, would institute suit to force a partition of said plantation, by licitation, and stated that, as the property was not divisible, in kind, without loss or diminution of its value, the said Bell would be forced to protect himself at the sale; and that the said Borah thus dissuaded the said Bell from taking up said note. * * * That this was done for the purpose of preventing respondent from participating in the operation of the plantation during the year 1903, and to enable the said Borah to sell the undivided third interest of respondent at an inopportune time and purchase the same for himself, or for himself and Landen, at a low figure.” He alleges the transfer, on June 3, 1903, of the balance of $546 from the account of O’Niell, Landen & Borah to that of Landen & Borah. He further alleges that since the said 12th day of May, 1903, the said plantation has been operated by the said firm of Landen & Borah, although your respondent was entirely ignorant of the formation of said firm of Landen & Borah until the 19th day of April, 1904. * * * That the said Landen & Borah did not make any expenditures, since the close of the grinding season of 1902, for the benefit of O’Niell, Landen & Borah, nor for respondent’s benefit, but that any expenditures which they may have made were with a view of controlling the plantation, for themselves * * » ; and that the said Landen & Borah did not, at any time, notify or inform respondent of their intention to dissolve the firm of O’Niell, Landen & Borah. * * * That, after they had exhausted the money taken from the account of O’Niell, Landen & Borah, they discounted their note of $2,-500, secured by pledge of the crop of 1903, and placed the proceeds to the credit of Landen & Borah, and subsequently discounted their note for $500, and disposed of the proceeds in the same way. * * * “That he is not a member of the firm of Landen & Borah, *742 and does not owe any portion of their debts; that, at the end of the year 1902, the firm of O’Niell, Landen & Borah only owed $5,600; which was secured by mortgage on the St. Mary plantation, and which was not due, but that the said Landen & Borah now pretend and aver that since they have been operating the plantation, since the beginning of the year 1903, the indebtedness has increased to about $11,000;” that he signed the (mule) note of $720 “in error, and under the belief that it was for the benefit of the firm of O’Niell, Landen & Borah, which respondent thought still- existed.” After other allegations, he prays that an expert accountant be appointed to examine and audit the books and accounts of the firm, that plaintiffs’ aetion be rejected, and that his right to demand a final settlement be reserved.
The suit thus referred to was instituted, as we have stated, in February, 1904, while the executory proceeding of Borah v. O’Niell was pending, on appeal. In May following, the Court of Appeal having affirmed the order for executory process, defendant applied to this court for a writ of review, which was denied, about June 23d, and on the following day he tendered to the acting deputy sheriff of the district court the sum of $849.-61, as in full of the amount called for by the writ in his possession, but, under the instructions of the plaintiff in the writ, the tender was refused, on the ground that the amount tendered did not include the 10% attorneys’ fee, called for by the writ, and did not include, as sheriff’s costs, one-third of, say, $2,-143.58, the amount said to have been expended in operating the plantation under the joint management of Landen, Borah, and the sheriff. So far as we are informed by the record, the’ sheriff took no other "or further steps than had been taken on May 12, 1903, in the matter of executing the writ of seizure and sale. On July 23d, defendant applied for and obtained from the district court a writ of injunction prohibiting further proceedings under the seizure so made, on the grounds that it had been vacated by the appeal; that he had not received legal notice; that the amount tendered by him was all that the writ properly called for; and that the plaintiff Borah could not be permitted in that way to disrupt the planting partnership of which he was a member. He further alleged:
“That it is contended by the said * * * Borah that, at his instigation, the said John A. Landen, who is manager of the said plantation for the firm of O’Niell, Landen & Borah, was appointed as the sheriff’s keeper of the undivided one-third interest in said plantation, and shifted his position from that of manager to that of keeper, but that the pretended shifting of position was merely a part of a fraudulent conspiracy between said Landen & Borah to disrupt and wreck the firm of O’Niell, Landen & Borah, and defraud petitioner of his interest therein and in said plantation. He avers that the illegal charges made by said sheriff and said! seizing plaintiff were not disturbed [disbursed], by the sheriff, nor did any portion of said, amount pass through his hands; and that, even if the seizure were legal, the said illegal charges were not such as could be taxed as costs.”
The defendant in injunction having put the case at issue, it was tried, with the case now under consideration, and on December 12, 1904, the district court gave judgment to the effect that the suspensive appeal from the order of seizure and sale operated the release of the seizure, and hence that O’Niell was not bound to tender, as costs, any amount expended by or through the sheriff in planting operations, but that the tender, as made, fell short, in that it did not include the 10 per cent, attorney’s fee called! for by the writ, and the injunction was ac-' cordingly dissolved. From the judgment so rendered, both parties appealed, suspensively, and in August, 1905, the judgment appealed from was amended by the Court of Appeal, “to the extent of maintaining the * * * injunction * * * in so far, only, as to prohibit the seizure and sale of the crops and movables placed on said plantation. *744 bv the partnership of O’Niell, Landen & Borah, and not destined for its use and improvement,” and otherwise affirmed. The instant case was decided by the district court about the same time as the injunction suit, and, as we have heretofore stated, was appealed to the Court of Appeal, brought before this court by writ of review, remanded to the Court of Appeal, and finally remanded by that tribunal to the district court, with a ruling (interpreting the judgment of this court) to the effect that the petition discloses a cause of action and demand for a full settlement of the partnership, and that evidence should be received with regard to the transactions of the partners, subsequent, as well as prior, to the 12th of May, 1903. And thereupon defendant filed a supplemental answer (objected to by plaintiff) in which he alleges:
“That, in his original answer, he reserved the right to sue for a full and final settlement of the partnership, but, since the * * * Supreme Court has decided that such settlement may be had in the present suit, respondent desires to abide by, and comply with, such ruling, and to make his pleading conform entirely therewith.”
And he further alleges, in substance, that plaintiffs reimbursed themselves the advances previously made by them in 1903 from the money borrowed on pledge of the crop of that year, belonging to the firm of O’Niell, Landen & Borah, “and that the money so borrowed was paid from the proceeds of the crops; that the crops, * * * belonging to the firm of O’Niell, Landen & Borah, which was on the plantation in 1904 ready for harvest, and which was then proven to be worth at least $7,000, has since been removed, and sold for at least $7,587.40, and that the two plaintiffs have collected and appropriated to their own use, illegally, * * * those entire proceeds, belonging to the firm of O’Niell, Land-en & Borah. * * * That the plaintiffs are really indebted unto your petitioner, upon settlement of said partnership, which they (plaintiffs) admitted, on the former trial, was still in existence, and has never been dissolved, nor in any manner settled or liquidated. * * Wherefore he prays for a full and final settlement and liquidation of said partnership of O’Niell, Landen & Borah, and for judgment * * * for at least the sum of $3,279.15, * * * and for what further sums may be found due * * * on final settlement, * * * and * * * for all costs hereof and for all general and equitable relief.” As thus finally put at issue, the case was tried in the summer of 1906, though the judgment from which the present appeal was taken was not rendered until October, 1907. Upon the trial in question it was shown, among other things, that, in December, 1904, immediately after the suspensive appeal had been taken from the judgment first rendered in the case, John A. Baldwin, Jr., had obtained an order for the seizure and sale of the entire plantation, on notes amounting to $5,600, which had been given by O’Niell and Borah in part payment of the purchase price ; and we find in the record a letter from O’Niell to Baldwin (of date March 8, 1904), concerning the notes sued for, from which we make the following excerpts, to wit:
“If you desire to have these notes taken up before any public sale is made of the plantation, let me know, and I will have them taken up entirely. As I told you on the day after you took up these notes, I cannot afford to pay you 10% attorney’s fees nor any other unnecessary costs. I do not say that you place yourself into this matter for the purpose of imposing attorney’s fees or other expense upon me, but your refusal to state your position in the matter leaves me in a very awkward predicament. Will you carry the mortgage as an investment after the sale of the plantation of [in] the partition proceedings? Please let me know your wishes and intentions in this matter, and greatly oblige.”
Baldwin’s reply, dated March 9, 1904, reads in part as follows:
“In our previous conversation on this subject, I had intended to make it clear to you that I must refer the details of this business to learned counsel of the law service, O. P. Borah, Esquire, to whose judgment I largely defer. You say, T cannot afford to pay you 10% attorney’s *746 fees,’ etc. If you mean to insinuate that I should recover this money, or any part of it, you are off your nut. I had nothing to do with the writing of that 10% in the contract. It is an act of the attorney, made by the attorney, for the aggrandizement of the attorneys. I have always privately considered it not much other than extortion. But you ought not to ask me to interpose to prevent the consequence of your own act. Yours very truly,” etc.
Being examined as a witness in the ease (by the defendant himself), Mr. Baldwin gives the following, with other, testimony, to wit:
. “Q. At whose request did you purchase these notes; at whose suggestion? A. Judge Borah, my learned counsel of the land service. He told me that they were for sale * * * and that he thought they would be a good investment, and I bought them * * * Q. Who suggested that you foreclose on this mortgage? A. I don’t know whether there were any suggestions about it. Q. Did you ever make a demand on me for the payment of these notes? A. I don’t remember if I did or not. I don’t remember whether I made demand on you or not, but I think I suggested to my learned counsel to do so, but whether he did or not I don’t know. I left everything in his hands. Q. Did you ever make demand on me before you incurred any attorney’s fees; before you placed the notes in the hands of your attorney? A. I don’t remember about that. Q. Do you remember my telling you that I would make good the notes whenever you made demand for your money? A. I do not remember your making any such guarantee. * * * Q. What was your reason for refusing to grant me time in which to take up these notes, and save the attorney’s fees, and in refusing to notify me that you wanted your money? A. I did not love you. I did not consider myself under any obligation to you, whatever. I certainly am not in love with you, sir. * * * Q. You say Mr. Milling represented you from the time you placed the notes in his hands? A. I placed the notes in his hands for him to execute upon them. Q. Didn’t you place them in the hands of Mr. Borah, and he placed them in the hands of Mr. Milling? A. No, sir.”
Mr. Milling says in the testimony:
“I am not the attorney of Mr. Landen, in this litigation, but I was employed by Mr. Borah to represent him, and Mi-. Mayer was employed by Mr. Landen to represent him. * * * I wish to state to the court that I represented both Mr. Borah and Mr. Baldwin, and that I considered that I had a perfect right to represent them both, so long as their interests did not conflict, and that I considered that I had this right under the law.”
The evidence shows that the plaintiff Laud-en was appointed sheriff’s keeper in the Baldwin seizure, as he had been in the attempted Borah seizure, and that he signed a receipt prepared in the office of the plaintiff’s attorney reading in part as follows, to wit:
“January 14, 1905.
“Received of John B. Sanders, sheriff of the parish of St. Mary, La., the following described property: That certain tract of land * * * also the following property, attached to said land: 13 mules; 2 carts; 2 wagons; 5 plows; 10 sets of gear; 600 barrels of corn, more or less;- horses; 55 loads of hay, more or less: I, the undersigned agree to keep and hold the above property, in the suit of John Baldwin, Jr., vs. C. A. O’Niell et als., No. 11,528, as keeper, subject to the orders of the sheriff of the parish of St. Mary. [Signed] John A. Landen.”
Both of the plaintiffs herein were present at the sale, made by the sheriff under the Baldwin writ, and the plaintiff Borah was a bidder upon the property for himself and Landen. Neither of them pretended that the mules, corn, and hay were not to be sold with the land. The deputy sheriff, in making the sale, was in communication, through the telephone with the sheriff, and the latter was then in the office of Baldwin’s attorney who was, as we have seen, also the attorney of Borah. The stenographer employed in that office prepared the form of the act of sale intended to be used leaving blank spaces for only the amount of the purchase price, the name of the purchaser, and the date. The property was adjudicated to J. O. Rodriguez, for $13,700, and the price was paid in cash. Landen remained on the plantation for five or six days after the sale, and during that time made no claim to any of the mules, beyond a request, as he was leaving, that a team be loaned to him to haul away his personal effects, and the corn and hay, to which latter he had asserted a claim only a day or two before, and a team was loaned to him to move his personal effects, but his right to the corn and hay was denied, it being made plain to him that Rodriguez asserted title to the same, as included in his purchase, and the fact being that there was no more than was neces *748 ■sary for the maintenance of the stock on the place. The mules were all work animals ' which had been*bought by the owners of the plantation and placed there for its cultivation. Borah testifies, concerning the corn and hay, as follows:
“Q. State whether or not you got any of the corn and hay made in 1904? A. I did not. There was some corn left there, and I told Mr*. Landen to make a demand for it, but he did not press the demand, for I told him that we could get it in another action. In my opinion it was movable property, as decided in the 47th Annual. * * * Q. You did not press the claim? A. No, sir; rather than have any more litigation about the place, or anything pertaining to it, I decided to let it go.”
On the day upon which it was adjudicated to him, Rodriguez sold the property to the defendant, the mules, “corn and other feed stuffs” being specifically included. On March 11th following, O’Niell reconveyed to Rodriguez an undivided half interest in the property, and on September 1, 1906, the two co-owners sold the whole property to the North Bend Sugar Company, the deed specifying mules, but not feed stuff.
In giving his reasons for the judgment appealed from, the learned judge of the district court says:
“After the cause was remanded, the circuit court declined to decide the case, as presented to them, but remanded it to this court ‘for the purpose of receiving evidence of all partnership transactions, its assets, and liabilities, and all matters connected therewith, so that a full and complete accounting may be had, proper disposition ordered of any assets, and responsibility recognized and decreed for any liability of the partners among themselves.’ This is that honorable court’s interpretation of the judgment of the Supreme Court, when refusing the motion for rehearing. Following the instructions of the Court of Appeal, during the present trial, I have, received all evidence in reference to all partnership transactions, its assets and liabilities, and all matters connected therewith, from the inception of the partnership to the date on which the plantation was sold, under executory process, in suit entitled “John Baldwin, Jr., vs. O. A. O’Niell et als., No. -of the docket of this court.” I have concluded that, after the seizure of May 12, 1903, which dissolved the partnership, O’Niell could not be held liable as a partner. I therefore settled the partnership affairs up to that date. I took the position that any debts incurred after the seizure which dissolved the partnership were not involved in the settlement thereof. This seems to have been the opinion of the Supreme Court, but it was not so construed by the Court of Appeal. The latter court decides, as I understand their decision, that the crops of 1903 were partnership assets because they were pitched with partnership funds; that the movables on the plantation, such as farming utensils, carts, plows, etc., are likewise partnership property; and. reasoning from the premise advanced by them, I conclude that they consider that the crops of 1904 are connected with the partnership affairs, because they were made with partnership property, to wit, with the mules and farming implements. Therefore I have considered all these matters, and have settled and liquidated the partnership with reference to them. In my original judgment, I found ‘that the amount due by C. A. O’Niell, on account of the expenses of this planting copartnership, up to May 12, 1903, was §509.-99, with 5 per cent, per annum interest from May 12, 1903, and the further sum of §257.65, with 8 per cent, per annum interest from January 1, 1904, until paid, and 10 per cent, on the aggregrate amount, as attorney’s fees, this being the one-third due by O’Niell on the note executed by him, in solido, with the plaintiffs herein.’ This amount was obtained from the proof in the record, up to May 12, 1903. I find from the proof in the record that the expenses for making the crop from May 12, 1903, until December 10, 1903,
were ........................ §2.367.85
Less proceeds of crop of 1903... 1,378.74
$ 989.11
Five per cent, interest on same to December 31, 1904 ........ 52.34
$1,041.45
One-third chargeable to O’Niell ........... $347.15
The crop of 1904 sold for ............... $7,597.40
The expenses amounted to ............. 4,924.60
Net gain ........... $2,672.80
One-third due O’Niell $890.93%
Amount due by O’Niell on crop of 1903, up to May 12, with interest .................... 552.71
Amount due by O’Niell on crop of 1903 from May 12 to December 10, 1903............. 347.15
$ 899.86
Amount due O’Niell from crop of 1904 ........................ 890.93%
Balance due by O’Niell...... 8.92%”
*750 The learned judge further concluded that the mules on the plantation were included in the sale under Baldwin’s writ, but that the corn and hay were not so included, and that O’Neill, having taken possession as purchaser from Rodriguez, should account to plaintiff for two-thirds of the value thereof, which he fixes at $766.66%.
He therefore gives judgment against defendant for $775.59, with interest, at 5 per ■cent, from February 25, 1905, and for $257.65, with interest at 8 per cent, from January 1, 1904, and 10 per cent, upon the aggregate of principal and interest, as attorney’s fees. 1-Ie further condemns defendant to pay all costs.
Plaintiffs allege, in their petition, that the amount realized from the sale of the crop, “and other credits,” in 1903, was $1,428.23, and that the expenses, up to December 10th (when the crop was sold), were $4,664.39, of which amount, they say, $2,110.79 were expended up to May 12th; from which, it would follow that $2,553.60 were expended between May 12th and December 10th. In administering their proof, however, they show that the amount expended between the dates mentioned was $2,367.85, and it is admitted that, from the $2,110.79 alleged to have been expended up to May 12th, there are to be deducted an item of $470, charged for cotton seed meal, of which, plaintiffs have paid only their shares, and the sum of $110.83, overcharged for the salary of Landen, as manager. Pretermitting the question of interest on money advanced by plaintiffs and the 10 per cent, attorney’s fees allowed them on the note given for the purchase of the mules, the expense account for 1903, for one-third of which defendant, considered as a partner, should be held liable, may therefore be stated as follows, to wit:
Expenses to May 12...... $2,110 79
Less bill for cotton seed
meal ..................... $470 00
Less overcharge for salary of Landen............ 110 83 580 83 $1,529 96
Expense from May 12 to Dec. 10.......... 2,367 85
Total expenses .......................... $3,897 81
Less proceeds of crop “and other credits” 1,428 23
Excess of expenditures over receipts...... $2,469 58
Of which defendant is liable for one-third, or .......................................... $ 823 19
And to this is to be added one-third of $772.96, being the amount expended by plaintiff, January 1, 1904, in paying, with interest, the note of $720, given for the purchase of mules in February, 1903____ 257 65
$1,080 84
The crop of 1904 sold for $7,597.40, as against which plaintiffs charge expenses to the amount of $4,924.60, thus showing a credit balance of $2,672.80. In the expense account, there is an item concerning which plaintiff Borah testifies as follows:
“It will be seen here on this statement, marked ‘A,’ the item of February 13, ‘By cash on payroll, $50,’ that it is not checked. I don’t think I had a voucher for it. I looked for it but could not find it. It may have been that Mr. Landen went to the bank and asked for the money and they gave it to him. The check would be made payable to cash. I have so many checks made out to cash that it is hard to tell which ones were made out for the plantation unless some mark was made on them. I generally made a note on the check, as to what it was for, when the check was made payable to cash, as, for instance, this check No. 14, I noted on it wliat it was for. * * * Q. What notation did you make? A. On this check, No. 14, dated June 30, 1904, ‘Pay to cash $226.10, pay roll for June.’ Q. Then, if you had not made that notation on the check, you would not have been able to state what it was for? A. No, sir; for there would be nothing to show what it was for. Q. Then, all the items on this statement marked ‘A,’ which are checked, were all paid by you? A. Yes, sir. Q. They’were all paid out of your personal account? A. Yes, sir,” etc.
It will be observed, however, that the witness states that the item of $50, here in question, was not checked (or verified); that he was unable to find a voucher for it; and that, if he had found the return check, of date February 13th, he would not have known whether it .had been given for plantation expenses unless it had contained a note, *752 or memorandum, to that effect. The item is therefore unproved. There is another item, charged upon the same date (February 13, 1904), “H. Block, for deed to Thorguson, $8.00,” which does not appear, and is not shown, to be chargeable to plantation expenses. There are also two items, the one of $4.10, and the other of $116, charged for interest on advances, which for present purposes will be deducted, so that the account for 1904 will stand as foilows:
Proceeds of crop........... $7,597 40
Expenses .................. $4,924 60
Less item of February 13, 1904, not proved..........$ 50 00
Less item of February 13, 1904, not proved......... 8 00
Less item of January 30, 1904, interest charge.... 4 10
Less item of December 31, 1904, interest charge.... 116 00 178 10 4,746 50
Excess of receipts over expenditures...... $2,850 90
Of which defendant is entitled to one-third or .......................................... 950 30
Share of loss due by defendant on crop of 1903 ..................................... $1,080 84
Less share of profit due to defendant on crop of ’04......................'............ 950 30
Balance due by defendant.............. $ 130 54
Opinion.
It is true that, in the original opinion handed down by this court reviewing the action of the court of appeal in maintaining defendant’s exception of no cause of action, there are some expressions, used arguendo to the effect that Borah’s alleged seizure of defendant’s interest in the plantation operated a dissolution of the partnership, but on rehearing it was said, “It may be conceded that a partnership is not, ipso facto, dissolved by the seizure of the interest of one of the members,” and it was held that “without reference to the question of disolution vel non, * * ■* the petition discloses a cause of action”; and the Court of Appeal correctly interpreted the judgment so rendered in remanding the ease for further evidence concerning the transactions and relations of the parties, subsequent as well as prior to May 12, 1903. That an order by virtue of which a writ of seizure and sale may issue is in so far a judgment as that an appeal will lie, and that the time and conditions within and upon which the appeal is to be taken, in order to suspend the execution of such judgment, are regulated by Code- Prac. art. 575, are no longer open questions. Tilghman v. Dias, 12 Mart. (O. S.) 691; Gurlie et al. v. Coquet, 3 Mart. (N. S.) 499; Mathe v. McCrystal, 11 La. Ann. 4; Lombas v. Robichaux, Sheriff et als., 14 La. Ann. 105; State v. Judge, 16 La. Ann. 392. It is equally well settled that, so long as it is taken within the delay allowed by law, a suspensive appeal devests the trial court of jurisdiction to execute the judgment appealed from, whether it be taken the moment the judgment becomes appeal-able or at a later period, within such delay. Smelser v. Blanchard, 15 La. Ann. 254; State ex rel. Gourgotte v. Porte, 27 La. Ann. 431; State ex rel. Stuart v. Judge, 45 La. Ann. 1325, 14 South. 59. It is true, and it has so been held by this court, that, “If an execution issues prematurely, the party injured cannot demand to have an injunction, restraining it, perpetuated, if his adversary has a right to obtain another execution as soon as the injunction against the former is perpetuated” (Dayton v. The Commercial Bank of Natchez, 6 Rob. 20); from which it follows that an execution may issue within the delay allowed for a suspensive appeal, up to the time that the appeal is taken, and, a fortiori, would this seem to be true as to the writ of seizure and sale, since Code Prac. art. 735, provides that:
“In obtaining this order of seizure, it shall suffice to give three days’ notice to the debtor, counting from that on which the notice is given,” etc.
The three days thus referred to, are, however, “days of grace, given to the possessor of mortgaged property to pay the debt de *754 manded, before a seizure by tbe sheriff,” tbe delay within which he may suspend the execution of such order, by appeal, being fixed by Code Prae. art. 575. Lombas v. Robichaux, supra. When, therefore, the party in interest causes a writ, either of fieri facias or of seizure and sale, to issue within the delay allowed for suspensive appeal from the judgment to be executed, he assumes the risk of having the writ, and the seizure made thereunder, vacated and avoided, and subjects himself to a possible action in damages, as the result of an appeal, which, if taken within the legal delay, may operate to suspend the execution of the judgment, as from the moment that such judgment may have become final and appealable. In the ease at bar, the defendant, having, within the legal delay, taken his suspensive appeal from the order of seizure obtained by the plaintiff, Borah, the writ and seizure, prematurely issued and made, were vacated and avoided, and, although it was subsequently held by the Court of Appeal that the writ might properly issue as to the plantation, though not as to the growing crop, mules and movables, we find no evidence in the record that any other writ was issued or any other seizure made; in fact, som.e. months before the judgment thus referred to was rendered, the whole plantation was sold, under the seizure made at the instance of Baldwin, as the holder of notes, secured by mortgage and privilege priming the mortgage of the plaintiff whose foreclosure, upon the one-, third interest of the defendant, was necessarily abandoned.
We find nothing, therefore, in the premature seizure of May 12, 1903, which would justify us in holding that the partnership between plaintiffs and defendant was thereby dissolved, nor do we find anything in the multifarious pleadings of the parties, plaintiff or defendant, which can be said to commit either to the position that the partnership was so dissolved. The prayer of the petition in this ease, filed some eight months after the seizure in question, is (among other things) “for a judgment decreeing a dissolution of the partnership existing between them [plaintiffs] and the said C. A. O’Niell.” Defendant, in his original answer, alleges that plaintiffs conspired to bring the partnership to an end; that they suspended its operation without notice to him, and conducted its business, as the firm of Landen & Borah; that he was not a member of said firm, did not know of its existence, and is not liable for the debts contracted by it; that they did not inform him of their intention to dissolve the firm of O’Niell, Landen & Borah ; “that, at the time he signed the mule note, sued on herein, he did not know that the plaintiff had in fact dissolved the firm of O’Niell, Landen & Borah and had organized the firm of Landen & Borah, * * * and he signed said note under the belief that the firm of O’Niell, Landen & Borah still existed.” In his supplemental answer, filed after it had been decided by the appellate court that the partnership was not, ipso facto, dissolved by the seizure and that plaintiff’s petition discloses a cause of action for a full settlement of all partnership matters, without reference to the seizure or date of dissolution, defendant, accepting the ruling thus made, alleges that the partnership “has never, yet, been legally dissolved or in any manner liquidated,” and prays for a final settlement on that basis.
In view of the situation thus presented, it is unnecessary to inquire whether the action of the plaintiffs would not have afforded defendant a just ground for asking that the partnership be dissolved, as of date May 12, 1903. Possibly, it might have been to his advantage to take that position. On the other hand, it is quite clear that plaintiffs could not dissolve the partnership, without the knowledge of defendant, or, by attempting, at an inopportune moment and without previous *756 notice, to enforce the payment of a personal debt, due by him to one or both of them, or by illegally excluding him from participating in the business.
The partnership was, therefore, not dissolved until February 25, 1905, when the plantation, for the cultivation of which it was organized, was sold by the sheriff in satisfaction of the mortgage held by Baldwin. We have found that, for the purposes of the settlement, defendant is indebted to plaintiffs in the sum of $130.54, the questions of his liability for interest on money advanced to the partnership by the plaintiffs, for the 10 per cent, attorney’s fees, stipulated in the mule note, and for the value of the mules, corn, and hay which were on the plantation when the sale was made, being left for decision. Plaintiffs advanced some money during the early part of the year 1903, but in July of that year, they obtained from the St. Mary Bank the sum of $2,500 (less discount) upon their note, secured by pledge of the growing crop, and, soon afterwards, reimbursed the advances previously made by them, presumably, by taking up their discounted obligations, so that on July 13, 1903, they were not out of pocket. Thereafter, during the remaining six months of 1903, they made other advances (including the $2,500 necessary to pay their outstanding note) amounting, in the aggregate, to, say, $3,897.81, of which they recovered from the proceeds of the crop “and other credits” $1,428.23, leaving them creditors of the partnership in the sum of $2,469.58, of which amount, as we have seen, the defendant owes, say, $823.20. Upon the other hand, plaintiffs owe defendant $950.30 as his share of the profits of the year 1904, and if he is liable to them for interest they are also liable to him. The advances were, however, made by plaintiffs in various amounts and at different dates, and the proceeds of the crop of 1904 were received by them in the same way, so that it would be difficult, if not impossible, to make an exact calculation of any balance of interest that might be due either way. Moreover, there was no agreement that interest should be allowed to either of the partners on advances incidentally made in the course, and for the purposes, of the business, or upon balances due either for advances or otherwise. The case, therefore, falls under the general rule, as thus stated, to wit:
“It is usually held that interest should not be allowed or charged upon advances, overdrafts, or undivided profits, in the absence of a special agreement to that effect. Such transactions constitute mere items in the partnership accounts, and before the accounts are settled and a balance struck there is no duty to pay over the money, and therefore a charge of interest, as damages, cannot be justified.” A. & E. Enc. of Law (2d Ed.) vol. 22, p. 125; Hen. Dig. vol. 2, p. 1903, IY (b).
Plaintiffs claim for the 10 per cent, stipulated in the “mule” note to be paid as attorney’s fees has still less in the way of reason, law, or equity to support it, and appears to be predicated upon a misapprehension of the partnership relation.
The mules, for the price of which the note in question was given, as also the other mules on the plantation, were placed there by the owners for the service of the plantation, became immovable, by destination, and were affected by, and sold under, the mortgage held by Baldwin; and the same thing may be said of the corn and hay. Calder v. Creditors, 47 La. Ann. 346, 16 South. 852; Maginnis v. Oil Co., 47 La. Ann. 1489, 18 South. 459; Succession of Allen, 48 La. Ann. 1047, 20 South. 193, 55 Am. St. Rep. 295; Baker et als. v. Lee & Parks, 49 La. Ann. 874, 21 South. 588; Rev. Civ. Code, art. 468; Code Prac. art. 645.
A balance having been found due by defendant, he was properly condemned for the costs of the district court. St. Romain v. Robeson, 12 Rob. 194.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be *758 ■amended by reducing the aggregate amount •awarded to plaintiffs from $1,083.24 to $130.-54, rejecting their demand for 10 per cent, •on any part of the amount as attorney’s fees, and allowing interest on said $130.54 at the rate of 5 per cent, per annum from the date •at which the judgment shall become final, instead of as allowed by the district court. It is further decreed that, in all other respects, the judgment appealed from be affirmed, the costs of the appeal to be paid by the plaintiffs.