(98 South. 674)

No. 25573.

## CONNETTE v. WRIGHT.

(Oct. 22, 1923. Rehearing Denied by Division C Jan. 7, 1924.)

*(Syllabus by Editorial Staff.)*

1. **Tenancy in common** &#9758;32—Part owner in oil lease having received benefits thereof held liable for his share of operating expenses.

In a suit by the owner of a nine-tenths interest in an oil lease against the owner of a one-tenth interest, to recover one-tenth of the expenses of operating the lease, where it appeared that defendant had received the full benefit of the development of the property by plaintiff, and had received one-tenth of the proceeds of the oil sold, *held*, that defendant could not repudiate his liability for expenses legitimately incurred, the receipt of his share of the proceeds of the oil by execution of division orders being a complete ratification of the operations conducted by plaintiff on the entire property.

2. **Tenancy in common** &#9758;32—Part owner of oil lease held liable for share of expenses of supervision.

In a suit by the owner of a nine-tenths interest in an oil lease against the owner of a one-tenth interest to recover one-tenth of the expenses of operation, *held*, that it was proper to charge defendant with his part of the expenses for supervision, it appearing that supervision was the most economical and effective way of operating the lease.

3. **Mines and minerals** &#9758;74—Oil in storage held to pass by sale of part interest in oil lease.

In a suit by the owner of a nine-tenths interest in an oil lease against the owner of a one-tenth interest to recover a one-tenth part of the expenses of operation, where it appeared that defendant had sold his interest to plaintiff, an item representing the value of oil in storage could not be allowed defendant, the sale to plaintiff carrying all defendant's interest in the lease, together with all movables and other property thereon, including all oil runs.

4. **Tenancy in common** &#9758;32—Part owner in oil lease held liable for expenses, notwithstanding they were greater than proceeds of production.

In a suit by the owner of a nine-tenths interest in an oil lease against the owner of a one-tenth interest to recover one-tenth of expenses of operation, *held*, that defendant was liable where he had received the benefits of the proceeds of the oil, notwithstanding he had tendered back the amount received on discovering that it was less than the cost of production.

5. **Mines and minerals** &#9758;74—Material in warehouse held to pass with sale of movable property located on oil lease.

Where the owner of a one-tenth interest in an oil lease sold it to the owner of the remaining interest, together with all removable property "located on or connected with the lease," the sale necessarily included movable property in a warehouse located on the lease, such property being purchased for and used in the work of developing the lease.

6. **Interest** &#9758;60—Interest on interest not chargeable on ledger balances in determining share of liability for expenses of operating oil lease.

In an action by the owner of a nine-tenths interest in an oil lease against the owner of a one-tenth to recover one-tenth of the expenses of maintenance and operation, plaintiff could not recover interest upon interest as charged on ledger balances, in view of Civ. Code, arts. 1935–1939, inclusive.

7. **Interest** &#9758;19(1)—Part owner of oil lease held not liable for interest on his share of expenses prior to presentation of account.

In a suit by the owner of a nine-tenths interest in an oil lease against the owner of a one-tenth interest to recover one-tenth of expenses of maintenance and operation of the lease, defendant was not liable for interest on the amount owing prior to presentation of a statement of expenses, the amount until then not being liquidated.

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

*Action* by E. G. Connette against O. A. Wright. From a judgment for plaintiff in a less amount than sued for, he appeals. Judgment in part set aside, and in part amended and affirmed.

Thigpen, Herold & Lee, of Shreveport, for appellant.

Foster, Looney, Wilkinson & Smith, of Shreveport, for appellee.

By Division A composed of O'NIELL, C. J., and ROGERS and BRUNOT, JJ.

ROGERS, J. In this suit, plaintiff seeks to recover one-tenth of the expenses incurred in developing certain mineral leases affecting lands in the parish of Claiborne.

Defendant being a nonresident, suit was instituted by attachment. Thereafter, by answer filed through his attorneys, defendant subjected himself personally to the jurisdiction of the court.

Subsequent to the submission of the case in the lower court defendant died, and his widow and executrix was made party defendant.

Plaintiff's claim as finally presented to the court amounted to $77,580.46.

The judgment of the district court condemned defendant to pay plaintiff $44,098.47, with legal interest thereon, sustained the writ of attachment, and nonsuited plaintiff's demand for supervisory charges.

Plaintiff has appealed, and defendant has answered the appeal, praying for the reversal of the judgment and the rejection of plaintiff's demands.

The leases were owned jointly by plaintiff and defendant in the proportion of nine-tenths to the former and one-tenth to the latter. They were acquired on March 30, 1919, by one act of assignment from the Atlas Oil Company.

The leases were in the form of optional contracts; that is to say, they ran for limited periods conditioned upon the payment of rentals, the full term of the leases to expire, even with the payment of the rentals, on March 27, 1921, unless prior to said date actual drilling was begun under each of them.

The leases are identical in terms with those passed upon by this court in Wilder v. Norman, 147 La. 414, 85 South. 59, except that, differently from that case, the contracts had been kept alive by the payment of rentals before the first day of January, 1919.

The act of assignment, in addition to a cash consideration, stipulates, as a further consideration, the assumption by the assignees "of all the obligations of said original leases, in so far as they do apply to and affect the lands" therein described.

All of these leases lay, at the date of the assignment, on the edge of the Homer oil field, the field being gradually extended for some time thereafter. The Arkansas Natural Gas Company having drilled a well offsetting one of the tracts covered by the assignment and known as the Shaw A lease, plaintiff, on January 21, 1920, wrote defendant advising that a location was being made in the northwest corner of the tract offsetting the well of the Arkansas Natural Gas Company and furnishing him with an estimate of the cost, the letter concluding:

"We believe that our chances of production on this acreage is extremely favorable and that in order to get our share of the flush production we must commence operation at once. We will bill you for your 10 per cent. of the expenses of drilling this well as same is incurred."

To this letter defendant replied that he did not desire to drill, and that any drilling operations carried on the property would be entirely at the plaintiff's risk and expense. Plaintiff, however, proceeded to drill the offset well, completing it as a producing well. Upon completion of the well, in order to sell the oil, a division order was signed by all the interested parties, including defendant, the division order reciting:

"The undersigned certify and guarantee that they are the legal owners of wells Nos. 1 and up on the United Oklahoma Oil & Gas Corporation, Inc., Shaw A, farm, located S. W. 4 of N. W. 4, section 31, township 21, range 7, parish of Claiborne, state of Louisiana,"

—and authorizing the Standard Oil Company of Louisiana to receive oil from said wells by purchase from the parties in the proportions named, the proportion to defendant being one-tenth of the working interest.

It is undisputed that the Standard Oil Company received the oil under this division order, and settled with the various parties, including defendant, whose signatures are attached thereto.

On March 3, 1920, plaintiff notified defendant that a location had been made, and a well, to be known as "Hardy No. 1," would be drilled on another of the tracts covered by the lease. At this date there was a producing well within 600 feet of the lease. No reply was made to the letter. However, defendant signed a division order on the Hardy lease similar to that on the Shaw A lease.

Plaintiff, likewise, without the approval and consent of defendant, drilled a number of wells on still another of the tracts affected by the lease, known as Shaw B lease. While a few of these wells proved to be nonproducers, the lease, as a whole, yielded more than one million barrels of oil, defendant's proportion of which he sold to the Standard Oil Company under a division order, and for which he was paid.

Defendant's contention, raised by way of answer to plaintiff's supplemental petition, is that, having never agreed to the drilling of any of the wells, he could not be held for the cost of dry holes and other wells not accepted by him, for locations without development and other expenses which did not inure to his benefit; although, as a matter of equity, he stood ready and willing to pay his pro rata share of a reasonable amount expended in drilling such wells as produced oil, of which he accepted his proportion; and he accordingly admitted an indebtedness to plaintiff of $41,877.73.

The contention is at variance with the averments of the original answer, in effect, admitting liability for the drilling of the wells by expressing a willingness to pay whatever amount he legally owed to plaintiff, and assigning as the sole reason for its nonpayment the excessive amount charged for producing the oil.

The contention is, also, contrary to the allegations of defendant's answer in resisting a demand for a partition by licitation of the leases in question in the case of Connette v. Wright, 149 La. 479, 89 South. 626, the record in which is in evidence herein. In his answer in that case, defendant alleged, among other things:

"It was contemplated that the oil produced from the property should be divided by delivery or selling same to a pipe line, and payments made to plaintiff and defendant in accordance with their ownership in said leases; that in accordance with this idea, division orders have been signed under which * * * the companies to whom oil has been sold have been paying direct to plaintiff nine-tenths of the proceeds of the oil produced, and to your defendant one-tenth; * * * that to attempt to effect a partition by licitation will operate a great hardship upon your defendant, * * * and will violate the purpose and object for which plaintiff and defendant acquired said oil and gas leases; * * * that the partition should be held in suspense until plaintiff and defendant have divided the oil in conformity with the object and purpose of the acquisition of the said leases."

It would therefore appear that by reason of his several judicial admissions defendant cannot now be heard to deny liability for his proportion of the reasonable costs actually incurred by plaintiff in drilling upon the lease, whether or not the wells so drilled were profitable.

[1] But however that may be, it is shown that defendant received the full benefit of the development of the property by plaintiff. The oil produced reached a total valuation of $3,049,850.79. Under the execution of division orders, declaring his ownership therein, defendant received one-tenth of this amount. He cannot now be heard to repudiate his liability for the expenses legitimately incurred in bringing about a result so

highly favorable to him and of which he took full advantage.

The execution of the division orders and the receipt of his share of the proceeds of all of the oil produced and sold was a complete ratification by defendant of the drilling operations conducted by plaintiff on the whole property. The acquisition of the property jointly as a whole and the drilling of wells by plaintiff on all of the leases, the benefits of which were availed of by defendant, must be considered as a single enterprise, jointly engaged in by the parties.

A statement (Exhibit P–M), filed in the record, shows the respective claims of the litigants. While liability for many of the items is denied, the correctness of all of them is admitted.

According to the statement, plaintiff's claim for expenditures as finally presented amounted to $1,105,500.19. Against this, credits are admitted in favor of defendant to the amount of $29,695, thus making plaintiff's net claim $1,075,804.63, of which 10 per centum, or $107,580.46, is charged as defendant's share. This charge, however, is reduced by the allowance of a further credit of $30,000 due to defendant for the purchase of his interest in the leases, "together with all movables and other property thereon, including all oil runs from and including October 1, 1921," thus making $77,580.46 as the net amount claimed by plaintiff from defendant.

Defendant disputes items on the statement to the amount of $357,027.32, 10 per centum of which is $35,702.73. The difference between this sum and the net claim of plaintiff as above stated is $41,877.73, which is the amount of the indebtedness admitted to be due by defendant. As stated, the judgment was for $44,098.47 and a nonsuit for supervisory charges demanded by plaintiff.

We have concluded, from a careful examination of the record, that, with the exception of the charge for interest on ledger balances, the plaintiff is entitled to recover the full amount of his claim, as finally presented.

[2] The district court erred in ordering the entry of a nonsuit on the item of expenses for supervision. The charge should have been allowed. In support of the item, it is shown that plaintiff could not obtain contractors which he could control or from whom he could obtain good service, and that the plan finally adopted was the most economical and effective way of doing the work. Defendant was notified of plaintiff's intention to do the work in the way in which it was performed, and he interposed no objection further than the expression of his general objection to the performance of any work whatsoever. The work could not have been effectively done at cost without supervision, and the maintenance of the office and field forces necessary for that purpose entailed a considerable expense, for which defendant is liable for his proportionate share.

[3] The item of $1,822.07, value of oil in storage cannot be allowed defendant. The item represents oil in storage on the date, October 6, 1921, of the sale by defendant to plaintiff of all of defendant's interest in the leases, "together with all movables and other property thereon, including all oil runs from and including October 1, 1921." The oil in question was stored between the dates of October 1, 1921, and October 6, 1921.

[4] Nor is defendant entitled to a credit on the item $4,816.79 representing oil taken and sold from Shaw A lease. Under a division order to the Standard Oil Company, plaintiff received his nine-tenths and defendant received his one-tenth of the proceeds of the oil. Although the expense of drilling on this particular lease may have exceeded the amount realized from the sale of the oil produced therefrom, defendant, having received the benefits of the production, cannot

be heard to dispute liability for his proportion of the cost of said production. The fact that, subsequently, when defendant's representative checked the account and ascertained that the amount received from this lease was less than the cost of production, he tendered back to plaintiff the amount received was ineffective to change the legal situation.

[5] In so far as defendant's objection to the item of warehouse material is concerned, it would appear that same is effectively disposed of by the sale under date of October 6, 1921, by defendant to plaintiff of all of the movable property "located on or connected with the lease." This sale necessarily included the movable property in the warehouse located on the lease.

Defendant contends, however, that he did not own any of this warehouse material, and that in making the sale he reserved "all his rights and privileges of contesting the account or claim sued on." Considering the disputed item in the light of this contention, we find that the material was purchased for and used in the work of developing the leases, and that, in view of the great amount of drilling required, the expense incurred therefor is entirely fair and reasonable. Having had the benefit of the material, defendant cannot be heard to deny his liability for its cost.

In our view, defendant is not liable for the interest charged on ledger balances. Originally, the item was improperly figured at $67,581.04 (Exhibit P–M). It is correctly stated, however, in Exhibit P–G, as amounting to $63,166.12, defendants' share of which would be $6,316.61. The result was obtained by compounding the interest monthly.

[6] In support of his right to recover the interest, plaintiff's counsel rely on the articles of the Civil Code (Nos. 1935 to 1938, inclusive). Under article 1939 of the Civil Code, however, plaintiff is clearly not entitled to interest upon interest as charged in the account.

The provision of article 1938 of the Civil Code is that all debts to bear interest from the time they become due.

[7] The original petition in this case failed to allege any specific amount of indebtedness to be due by defendant, and failed also to pray for a judgment against him in any specific amount; the prayer was for maintenance of the writ of attachment and for an order directing the garnishee to pay to petitioner all sums held in its hands for account of defendant. Although the petition was filed November 17, 1920, it was not until April, 1921, that a statement of the expenses claimed was rendered by plaintiff to the representative of defendant. This statement was so incomplete and erroneous that plaintiff's representative advised defendant's representative to disregard it. It was not until an audit of plaintiff's books was had in October and November, 1921, that a statement upon which a possible settlement could have been made was furnished defendant. Prior to that time, defendant certainly cannot be said to have been in default, and interest only began to run, if at all, from that date. Burton v. Chaney, 3 La. Ann. 338. Defendant was not obligated to pay plaintiff any amount until this amount was ascertained. Borah & Landen v. O'Niell, 121 La. 733, 46 South. 788. Interest is not allowable on an unliquidated demand upon an implied contract. Merchants' Collection Agency v. Gopcevic, 23 Cal. App. 216, 137 Pac. 609; Geohegan v. Union El. R. Co., 266 Ill. 482, 107 N. E. 786, Ann. Cas. 1916B, 762; also, American-Hawaiian Engineering & Const. Co. v. Butler, 17 Cal. App. 764, 121 Pac. 709.

The district court allowed interest only from the date of its judgment. We think this was a correct ruling under the circumstances of this case, and especially in view

154 La.—35

of the fact that no demand for interest is contained in the prayers of the original or supplemental petitions filed by plaintiff.

For the reasons assigned, it is therefore ordered, adjudged, and decreed that, in so far as it dismisses plaintiff's demands for supervisory charges as in case of nonsuit, the judgment appealed from is set aside; it is further ordered, adjudged, and decreed that said judgment be amended by increasing the amount of the recovery allowed plaintiff therein against Mrs. Pearl R. Wright, executrix of O. A. Wright, defendant, and the Standard Oil Company of Louisiana, garnishee, from $44,098.47 to $70,822.36; in all other respects the said judgment is affirmed. Costs of appeal to be paid by defendant.

Rehearing denied, by Division C, composed of OVERTON, ST. PAUL, and THOMPSON, JJ.