EASTERN DIST
*April,* 1839.

GOLDENBOW
*vs.*
WRIGHT.

price, even if this fact was known to the owner in his lifetime and not declared.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Parish Court be affirmed, with costs.

---

GOLDENBOW *VS.* WRIGHT.

APPEAL FROM THE PARISH COURT, FOR THE PARISH AND CITY OF NEW-ORLEANS.

The deposition of a witness, taken before a commissioner, who was twice examined and cross-examined by the defendant, *without objection*, will not be rejected on the trial, at the instance of the latter, on the ground that the witness was incompetent to testify.

The exception of domicil should be first acted upon, before swearing the jury to try the issue, if the party is desirous to avail himself of it.

It is the duty of masters of steam boats, as soon as a slave is discovered on board without permission, to cause him to be landed or secured.

So, where a slave was discovered on board, without permission, soon after the defendant's boat started from the port of New-Orleans, and was allowed to be employed by the cook, without any measures taken for securing him, and he was lost on the trip or voyage, the master is liable to the owner for his value.

Interest cannot be allowed on an unliquidated demand.

This is an action to recover the sum of six hundred dollars, the value of a slave, which the plaintiff alleges the defendant illegally took on board the steam-boat Lady Washington, which he commanded, and carried him out of the state, by which he was entirely lost, as he has never returned. The plaintiff alleges that he is the owner of said slave ; that he is worth six hundred dollars, and that the defendant is liable, by reason of his illegal conduct, to pay his value ; for which he prays judgment.

The defendant excepted, and alleged that he was domiciled in the parish of Natchitoches and could only be sued there. On the merits, he pleaded a general denial.

On these pleadings and issues, the cause was tried before a court and a jury.

On the trial, and after the plaintiff had closed his testimony, the defendant offered evidence to show that his residence or domicil was in the parish of Natchitoches, which was opposed by the plaintiff's counsel, as being waived by proceeding to trial on the merits, and it was rejected by the court. The defendant took his bill of exceptions.

Other objections were made, and questions of law raised by the parties, which, together with all the material facts of the case, are stated in the opinion of the court, which follows.

The jury returned a verdict of six hundred dollars for the plaintiff ; and from judgment confirming their verdict, and allowing interest, the defendant appealed.

*Roselius,* for the plaintiff.

*Preston, contra.*

*Martin, J.,* delivered the opinion of the court.

The defendant is appellant from a judgment which condemns him to pay the value of a slave of the plaintiff, taken on board of the steam-boat of which the former was master, without the consent of the latter, the slave having fallen overboard.

The facts of the case are these : the slave, who is stated in

the petition, to be a boy about thirteen years of age, went on board of the boat unperceived by the defendant, on a trip from New-Orleans to Natchitoches, in company with a sister of his, a connection of the wife of the cook, who, discovering the boy about an hour after the boat left the city, took charge of him as an acquaintance, and employed him as an assistant in the cook's room. The boy was not concealed, and at times carried dishes from the cook's room to the table in the cabin. He was missed from on board after the boat had proceeded several miles above Bayou Sara. It was supposed he had been drowned by falling overboard. A boat was sent in search of him, but in vain.

Our attention is directed to a bill of exceptions taken to the admission of the deposition of William Brown, a black man, on the ground that he must be presumed to be a slave ; and there was no evidence of his freedom, except a part of his deposition, in which he avers he was free, and had free papers. The court overruled the objection, on the suggestion that it was taken too late at the trial, and ought to have been made before the commissioner.

It does not appear to us the court erred, although the reason given for overruling the objection would not, perhaps, have been sufficient ; but the witness was examined twice, and cross-examined on the part of the defendant, who, in our opinion, ought not to be permitted to repudiate testimony of which he had sought to avail himself.

A second bill of exceptions was taken to the refusal of the judge to receive evidence in support of a plea to the jurisdiction of the court, on the ground of the residence of the defendant out of the parish in which he was sued ; the court being of opinion that the plea was waived, and, after argument, rejected by the court.

We understand that the court meant that the plea was waived by the defendant's neglect to provoke the action of the court on it, and proceeding to trial upon the merits before a jury sworn to try the issue, and that, therefore, the court rejected it. It does not appear to us the court erred.

A third bill was taken to the refusal of the court to charge

EASTERN DIST.
*April*, 1839.

GOLDENBOW
*vs.*
WRIGHT.

So, where a slave was discovered on board, without permission, soon after the defendant's boat started from the port of New-Orleans, and was allowed to be employed by the cook, without any measures taken for securing him, and he was lost on the trip or voyage, the master is . liable to the owner for his value.

The deposition of a witness taken before a commissioner, who was twice examined and cross - examined by the defendant without objection, will not be rejected on the trial, at the instance of the latter, on the ground that the witness was incompetent to testify.

The exception of domicil, should be first acted upon, before swearing the jury to try the issue, if the party is desirous to avail himself of it.

the jury, that the 5th section of the act of the 13th of February, 1816, relied on by the plaintiff, was not applicable to the master of a boat running entirely in the state, and only to slaves concealed on board : the court refused to instruct the jury as requested, but charged them, that it was the duty of a master running entirely in the state to cause his vessel to be searched before leaving port, and the moment he discovered a slave, to cause him to be landed or dealt with as required by the said section. The act cited was expressly enacted to prevent the transportation of slaves out of the state. This may almost as well be effected by steam-boats approaching the line of the state of Mississippi, on the left bank of the river, as is done by boats running into Red river, as by those who run up the river above that line. It does not, therefore, appear to us, that the injunction to masters of steamboats who discover concealed slaves on board, to land them as soon as possible, is applicable to this case.

The court, therefore, did not err in refusing to say that the 5th section of that act which contained this injunction is inapplicable to boats running within the state. This section relates only to *concealed* slaves; but the proviso in the first section of said act creates a presumption that all slaves found on board are received or *concealed* for the purpose of being carried out of the state, unless the presumption be removed by the party accused. We are ignorant of any law that requires the master of a steam-boat to cause her to be searched before her departure, for concealed slaves; but we concur with the judge *a quo* in the opinion, that it is the duty of a master of a boat, as soon as he discovers a slave on board, to cause him to be landed or secured.

It is the duty of masters of steam-boats, as soon as a slave is discovered on board, to cause him to be landed or secured.

Steamboats offer such facility to the escape of slaves, that as soon as the master of a boat discovered that his vigilance had been eluded, and that a slave had come on board against the will of his owner, he ought to take measures for his detention and return. In the present case, the cook, for whose conduct the master is responsible, employed the plaintiff's slave, without taking any measure for securing him. It does not appear to us that the verdict is incorrect in

charging the defendant with the value of the slave; but the jury and the court, in our opinion, erred in allowing interest thereon. .

It is, therefore, ordered, adjudged and decreed, that the judgment be annulled, avoided and reversed, and that the plaintiff recover from the defendant the sum of six hundred dollars, with costs in the court below, and that he pay those of the appeal.

EASTERN DIST.
*April*, 1839.

