21 So.2d 495

SUGAR FIELD OIL CO., Inc., v. CARTER
et al.

No. 37192.

June 26, 1944.

On Rehearing Feb. 19, 1945.

Fred G. Benton and Clint L. Pierson, both of Baton Rouge, for plaintiff and appellant.

O'Niell & O'Niell, of New Orleans, for defendant-appellee Reese E. Carter.

Moss & Graham and Liskow & Lewis, all of Lake Charles, for Frank L. Hereford, creditor trustee, defendant-appellee.

FOURNET, Justice.

This suit was instituted by the Sugar Field Oil Co., Inc., against Reese E. Carter and against Frank L. Hereford, individually and as the trustee and agent of Carter and his creditors, to recover in solido the sum of $25,000 allegedly due the plaintiff as its commission for services rendered in securing a purchaser for Carter's properties; in conformity with an oral agreement be-

tween the plaintiff and defendants; and, in the alternative, to recover this amount for the services rendered on a quantum meruit basis. Pending a determination of the issues involved, the plaintiff sought a preliminary injunction prohibiting Hereford, individually and as the trustee and agent of Carter and his creditors, from disbursing the assets in his possession as trustee for Carter's creditors, which were then being held in status quo by him under a temporary restraining order issued by the court.

In response to the rule to show cause why the preliminary injunction should not be granted, both defendants pleaded the prematurity of the action because, under the allegations of the petition, it was predicated on the consummation of the sale of Carter's properties to the, Midland Oil Corporation of New York, which sale had never, in fact, been consummated, and averred that the corporation had only been granted an exclusive right to purchase a four-fifths undivided interest in Carter's properties, which right still existed, it not having been exercised at the time the suit was filed.

In support of these pleas the defendant introduced in evidence the agreement with the Midland Oil Corporation dated June 24, 1942, and the testimony of Hereford who said, among other things, that he had received the $65,000 consideration recited in the agreement and that the rights granted the corporation thereunder had not been exercised.

The trial judge maintained the pleas of prematurity and denied the preliminary injunction. By agreement of counsel the case

was then submitted to the court on the merits on the record as made up and the court, maintaining the pleas of prematurity, dismissed plaintiff's suit. The plaintiff was granted and perfected an appeal from both of these judgments, devolutively from the refusal to grant the injunction and suspensively from the dismissal of its suit.

The record discloses that the defendant Carter, who was the owner and operator of certain oil and gas leases and mineral interests in the parishes of Acadia and Jefferson, became so involved financially that at a meeting of his creditors held in New Orleans in February of 1942, by agreement of all concerned, Frank L. Hereford of Lake Charles, Louisiana, was selected to serve as their trustee and representative. Under this agreement Hereford was given Carter's note for $225,000, the aggregate amount due the creditors of Carter whose claims exceeded $1,000. This note was secured by a mortgage and pledge covering all of Carter's assets and revenues. As the trustee Hereford was authorized to release from the mortgage and pledge such properties and assets as Carter might propose to sell for the benefit of the creditors, provided his action in this respect was approved by A. S. Vandervoort, Jr., and Turner Briggs, or either of them. All the revenues derived from Carter's assets were to be turned over to the trustee, who was to return to Carter a certain amount each month to cover the expenses incurred by him in the operation of the properties. All other proceeds, after deduction of this amount turned over to Carter, were to be expended in paying those creditors whose claims were

less than $1,000, the smallest to be paid first. Any additional revenues were to be distributed pro rata among the other creditors in accordance with the amounts of their claims, preferential distribution being made to those creditors holding liens on any particular asset that might be sold, provided Vandervoort and Briggs, or either of them, concurred with Hereford in this respect.

The month following this meeting of the creditors, it having become apparent that this solution to the problem was not working out satisfactorily and that it was advisable to sell Carter's entire property, J. Edward Jones, president and principal owner of the plaintiff corporation, engaged in the acquisition and sale of oil leases, land, royalties, and mineral rights, and the development of such properties, was approached with the view of solving the problem. Jones orally advised the defendants Carter and Hereford that he was not personally interested in purchasing the properties but that he would submit the offer to a company founded by him, the Midland Oil Corporation of New York, whereupon Carter and Hereford verbally agreed that if he should procure this company as a willing purchaser they would negotiate and consummate the sale themselves and the plaintiff corporation, represented by Jones, would be given an oil rig and half interest in another such rig if and when such sale was consummated.

In conformity with this agreement, Jones immediately contacted the Midland Oil Corporation and subsequently its president, upon the persuasion of Jones, came to Louisiana, where, accompanied by Jones, he inspected all of these properties. Following this Jones was invited by Hereford to attend a conference that was participated in by Carter and the advisory committee. At this conference Jones was urged to waive all right in and to the rigs and to accept, instead, a fee of $25,000 for his corporation's services, to be paid out of the proceeds of the sale to the Midland Oil Corporation. From this time on the negotiations with the corporation were handled exclusively by Hereford, representing the creditors, and Carter, without any participation therein by Jones, and Jones was not advised of the progress being made. A deal was closed on June 24, 1942, whereby the corporation (in return for a cash payment of $65,000) secured an option terminating on May 1, 1943, to purchase a four-fifths interest in Carter's properties, with the privilege of having the option extended to September 1, 1943, upon the payment of $10,000, and further extended to December 1, 1943, upon the payment of an additional $10,000. Jones became informed of this fact in August and, his claim having been rejected by the creditors of Carter in December following, he instituted this suit on December 26, 1942.

The injunction in this case is sought under Article 303 of the Code of Practice providing that "courts of justice may grant injunctions in all * * * cases when it is necessary to preserve the property in dispute during the pendency of the action, and to prevent one of the parties, during the continuance of the suit, from dilapidating the same, or from doing some other act injurious to the other party." However, under Article 158 of the Code of Practice it is declared: "When the demand is premature,

that is to say, when the action has been brought before the debt had become due, the suit must be dismissed, leaving to the party his right to bring his action in due time," and the further stipulation that *"if the obligation be conditional, and its execution be demanded before the condition has been fulfilled,"* the same rule applies. (Italics ours.)

We think, as did the trial judge, that: "The document which has been filed in evidence, evidencing the agreement in this case, is clearly an option and not a sale. There is no obligation on the part of the Midland Oil Company to pay the balance of the agreed purchase price should they decide not to exercise the option, and until the purchase price is actually paid, according to the allegations of the petition, the commission is not due."

Counsel for plaintiff, however, strenuously argued both orally and in brief that the action is not premature as to the alternative demand to recover for the services rendered on a quantum meruit basis and that an injunction should issue to prevent any disbursement of the fund in the hand of the trustee since under the terms of the option agreement the entire amount of the purchase price may be paid before the expiration of the option and disbursed by the trustee among the creditors and the plaintiff's claim thus defeated while the transaction still remains under the designation of an option.

Counsel is in error in these contentions for plaintiff's right to recover both under the main and the alternative demand is predicated on the consummation of a sale

of Carter's property to the party or firm procured by it.

The fact that under the terms of this agreement the entire amount of the purchase price may be paid over to Hereford as trustee for distribution to the creditors of Carter and by him paid to the creditors before the expiration of the terms of the option, thus defeating the plaintiff's right to collect its claim, does not alter the situation, for the purchase of an option to buy is not the consummation of a sale. We think plaintiff's own appreciation of its action is an answer to this contention for, in its brief, it is said: *"All plaintiff seeks to do by the preliminary injunction sought is to preserve the status quo until the rights of the parties can be determined."* It is obvious, therefore, that the plaintiff was without right to have the funds held by Hereford frozen pending a determination of a claim that, according to the record, did not exist at the time the proceeding was instituted and the injunctive relief sought. The situation might have been different had the plaintiff alleged and shown that the so-called option agreement was a device used for the purpose of circumventing the obligation due the plaintiff and thus defrauding it of the commission due. (Italics ours.)

In its argument the plaintiff further contends that it is entitled to recover on a quantum meruit basis even if the agreement between the corporation and Carter is an option and does not eventually result in a consummated sale because the service rendered has inured to the benefit of the creditors to the extent of the consideration paid for the option ($65,000). This issue

can only arise if and when a suit is predicated on that basis.

For the reasons assigned, the judgments appealed from are affirmed.

O'NIELL, C. J., recused.

PONDER, J., takes no part.

## On Rehearing.

HAMITER, Justice.

■ After further study of this case, following the granting of a rehearing limited to plaintiff's alternative demand for recovery on quantum meruit, we are of the opinion that additional proceedings in the trial court should be conducted.

It will be remembered that the suit was dismissed solely upon the theory that it was prematurely instituted. Plaintiff, on its main demand, had alleged that it was entitled to be paid under a contract for services rendered in the consummation of a sale of the Carter property to the Midland Oil Corporation of New York; and it prayed for judgment accordingly. Thereafter, defendants pleaded and proved that no sale had been effected, that the Midland Corporation had acquired only an option to purchase the property, thus disclosing the prematurity of the main demand.

However, in the alternative, plaintiff also prayed for a judgment based on quantum meruit. And it attached to and made a part of its petition numerous documents, principally correspondence had between it and the defendants, which must be considered in determining its cause of action. These

documents (not emphasized by plaintiff's counsel during presentation of the case on the original hearing), when read along with the specific allegations made, show that plaintiff is seeking to obtain payment under the alternative demand for services rendered in the confection of any transaction whatever, whether a sale or otherwise, by and between Carter and the Midland Corporation, and it is asserting that its efforts were entirely responsible for the parties' negotiating and closing some deal beneficial to defendants.

As before shown, in urging the prematurity of plaintiff's suit, defendants offered in evidence the option agreement, entered into by Carter and the Midland Corporation and approved by Frank L. Hereford, the trustee or representative of Carter's creditors. For that option to purchase Carter's property, as the provisions of the instrument recite, the Midland Corporation had paid over to Hereford the sum of $65,-000 cash; and the parties had agreed that such sum, as well as all amounts given for any extension of the option, would be applied on the agreed total purchase price of $258,034.48 if and when the option be exercised. In the event of failure to exercise the option, the consideration paid therefor, as is usually the case in transactions of that kind and as shown by one of Hereford's letters attached to the petition, would be retained by such trustee for the benefit of creditors, and Midland Corporation would take nothing.

If it be true, as defendants contend, that the only deal consummated was the option agreement, in our opinion plaintiff should

recover herein on quantum meruit a fee commensurate with the value of the services it has rendered, provided, of course, it can and does prove the alleged contract with defendants and that it was responsible for the option's confection. Assuming the existence of the contract and that the option was sold as a result of plaintiff's efforts, clearly it would be inequitable to deny to plaintiff the right to participate in the proceeds thereof, especially since the consideration obtained is a sum additional to Carter's assets from which the creditors, represented by Hereford, are seeking satisfaction of their claim. A denial of that kind would offend the moral maxim of the law that no one ought to enrich himself at the expense of another. C.C. Article 1965.

Therefore, we think that plaintiff's action, at least to the extent of the alternative demand, is not premature; and we also conclude that the petition, along with the annexed documents, is sufficient to allow recovery on quantum meruit and to permit the introduction of proof of that alternative demand.

Furthermore, it is our opinion that plaintiff is entitled to injunctive relief, preventing disbursement of funds in the hands of the trustee to the extent of $25,000 during the pendency of this action. Should this relief not be granted, the trustee could distribute such funds among the various creditors whom he represents, all to the irreparable injury of plaintiff and its rights. Code of Practice Article 303.

For the reasons assigned the judgments of the district court which denied plaintiff's application for a preliminary injunction and dismissed the suit are now reversed and set aside; defendants' exceptions of no cause and no right of action, of want of interest, and of prematurity, are overruled; and the case is remanded to the district court for further proceedings in accordance with law and consistent with the views herein expressed. Further, it is ordered, adjudged and decreed that the district court cause the issuance of a preliminary writ of injunction, on plaintiff's furnishing bond according to law, requiring defendant Frank L. Hereford, trustee, to retain, during the pendency of this action, $25,000 of the funds now held by him in his capacity of trustee or representative of such creditors. Costs of this appeal shall be paid by defendants and all other costs shall await the final determination of the suit. The right to apply for a rehearing is reserved to defendants.

O'NIELL, C. J., is recused.