MOISE, Justice.
 

 The plaintiff instituted this suit against the defendants to recover a commission of $25,000 for alleged services rendered in securing a purchaser for the properties owned by the defendant Carter; and for a preliminary injunction restraining the other named defendant, Frank L. Hereford, the trustee for the creditors of Carter, from disbursing the assets in his possession. The district court maintained defendants’ plea of prematurity, denied a preliminary injunction, and dismissed the suit. The plaintiff perfected appeals - devolutive from the refusal to grant the preliminary injunction, and suspensive from the dismissal of the suit.
 

 On the original hearing in this Court (207 La. 453, 21 So.2d 495) the judgment of the district court was affirmed. On rehearing, however, that part only of the judgment relating to the exception of prematurity directed at the claim for a commission on a sale was affirmed, as no sale had been made, but the preliminary injunction was reinstated and the case was remanded for trial on the alternative prayer of the petition for recovery on the basis of quantum meruit, 207 La. 464, 21 So.2d 498.
 

 
 *589
 
 After the case was remanded for trial on the merits, the district court rendered judgment in favor of plaintiff and against defendant Carter for the sum of $3750. This judgment was based on the district court’s finding that out of the option Carter profited to the extent of $75,000, resulting from Jones’ services in bringing the parties together, and that plaintiff should receive the usual brokerage commission of 5% of the option price under' its claim for relief on quantum meruit. The proceedings against Hereford were dismissed.
 

 From this judgment both the plaintiff and the defendant Carter have appealed.
 

 The record discloses that Reese E. Carter was the owner of certain oil interests, leases and drilling equipment. He was indebted in the amount of approximately $260,000. A meeting of his creditors was called and at this meeting Frank Hereford, Turner Briggs and A. S. Vandervort, Jr. were named as a board of trustees to administer Carter’s property, which had been surrendered for the benefit of his creditors. Subsequent to the creation of the trusteeship, Carter had orally agreed with J. Edward Jones, the president of the plaintiff company, that he would sell a three-fourths interest in all of his property for $275,000, Carter agreeing to reward Jones, provided Jones found a purchaser, by holding out from the property a rig and a half. In other words, the agreement between Carter and Jones was that the drilling rig and a half would not be included in Carter’s assets and that Jones would sell three-i’ourths interest in the remaining assets of Carter for $275,000. Subsequently, Jones, by virtue of his agreement with Carter, contacted the Midland Oil Corporation and interested that company in Carter’s property. During the negotiations between the Midland and Carter and Hereford, it developed that the rig and a half would have to be included in Carter’s assets in order to make the offer sufficiently attractive. Jones was asked by the defendants to release his claim to the rig and a half, and he agreed to waive any claim that he might have had thereto, in order that the deal might be consummated. Thereafter, Jones did not participate in the negotiations. Carter and Hereford procured an agreement under which the Midland obtained an option to purchase four-fifths of Carter’s property for $258,000, the exact amount of Carter’s indebtedness. 'The Midland, upon signing of the option agreement, paid the sum of $65,000, and later, $10,000 additional for the privilege of extending the option agreement, or a total of'$75,000, which amount went towards the payment of Carter’s obligations. The Midland did not exercise its option to purchase and the sale was never consummated.
 

 Jones claims that at the time he waived his interest in the rig and a half, Hereford, on behalf of the creditors, and Carter, agreed to pay him in place of the rig and a half the amount of $25,000. Upon the refusal of the defendants to pay Jones this amount, he filed suit.
 

 
 *591
 
 The case resolves itself into the question of the credibility of the witnesses. The plaintiff Jones offered no proof to support his claim except his own uncorroborated testimony. Hereford contradicted the testimony of Jones. Hereford had no authority, under the trust agreement, to disburse funds to persons other than creditors. Jones was not a creditor. Carter, although admitting the oral agreement, likewise contradicted Jones. Carter at the time was insolvent. He had no funds, derived no revenue from his property, and was in no position to pay a commission of $25,000, or any amount. The district judge summed up the matter by declaring in his reasons for judgment that “ * * * The court can not reconcile the testimony of the witness Jones with the facts as brought out by all of the other witnesses, as well as the documentary evidence”. We, however, as did the district judge, find that Jones was instrumental in producing the prospective purchaser for the property. That prospective purchaser was the Midland but that prospective purchaser did not buy Carter’s assets — an option agreement only was signed; and as a result of this agreement, the Midland paid $75,000. The Midland lost the money paid on this option because the right to purchase granted by the option was not exercised nor was a sale perfected. It was through the efforts of Jones that the creditors of Carter were enriched to the extent of the amount paid for the option and this sum went towards the liquidation of their claims. It is apparent that Carter did profit directly by the activities of Jones in interesting the Midland and the amount that was received on account of the introduction made by the plaintiff is fixed at $75,000. Jones is, therefore, entitled to recover on quantum meruit. The district judge allowed the usual fee for real estate brokers and found for the plaintiff in the amount- of $3750. We believe this award is fair and reasonable.
 

 The plaintiff prayed for interest from date of judicial demand. The recovery in this suit is predicated on quantum meruit. It is, therefore, an unliquidated claim. Under Article 554 of the Code of Practice “Interest at the rate of five per cent shall be allowed on all
 
 debts
 
 from the time they become due, unless otherwise stipulated”. (Emphasis ours.) It is true that interest is permissible from date of judicial demand in all ex delicto suits but this is purely statutory - see Act No. 206 of 1916, § 1. In this suit the district judge correctly allowed interest from the date of judgment. On that date the claim had become certain and liquidated by reason of the judgment. Connette v. Wright, 154 La. 1081, 1090, 98 So. 674.
 

 It is particularly noted that under our early jurisprudence interest on an unliquidated claim was not allowed even from date of judgment, because it was held, in effect, that a judgment was not a debt within the meaning of the Article of the Code of Practice. Pierce v. Flower, 5 Mart., O.S., 388; Andry v. Foy, 6 Mart.,
 
 *593
 
 O.S., 689; Lafon’s Executors v. Riviere, 1 Mart., N.S., 130; Buquoi v. Hampton, 6 Mart., N.S., 8; Parker v. Walden, 6 Mart., N.S., 713; Pressas v. Mendiburn, 4 La. 128; Cline v. Caldwell, 4 La. 137; Dyer v. Seals, 7 La. 131; Featherstone v. Robinson,
 
 7
 
 La. 596; Beal v. McKiernan, 8 La. 569; Bertrand v. Frazier, 11 La. 236; Goldenbow v. Wright, 13 La. 371; and Camfrancq v. Pilie et al., Executors, 1 La.Ann. 197. It has become the general practice of this Court to permit the allowance of interest from the date of judgment upon the principle that the judgment itself makes the claim a liquidated one.
 

 For the reasons assigned, the judgment of the district court is affirmed; defendants to pay all costs of court.
 

 O’NIELL, J., does not take part.