276 So.2d 395 (1973)
NORTH DEVELOPMENT COMPANY, INC, Plaintiff-Appellant,
v.
Glendon McCLURE, dba Empire Construction Company, et al., Defendants-Appellees.
Glendon McCLURE, dba Empire Construction Company, Plaintiff-Appellee,
v.
SOUTHERN ERECTION COMPANY, INC, et al., Defendants-Appellants.
Nos. 12056, 12057.
Court of Appeal of Louisiana, Second Circuit.
April 3, 1973.
*396 Thomas & Prestridge, by Dewey E. Burchett, Jr., Bossier City, for appellant in Suits No. 12056 and 12057.
*397 Hal V. Lyons, Shreveport, for appellee in Suits No. 12056 and 12057.
Before AYRES, PRICE and HALL, JJ.
PRICE, Judge.
These consolidated cases arise out of a contract entered into on March 18, 1971, between Glendon McClure, dba Empire Construction Company, and Southern Erection Company, Inc., wherein McClure agreed to install the paved streets and drainage and to grade and dress the lots in the development of the Parkland Village Subdivision, Unit 1, Bossier Parish, Louisiana, in accordance with the plans and specifications prepared by the project engineer. The owner of this development is North Development Company, Inc. Both corporations are controlled and managed by T. W. Alley, Sr. and T. W. Alley, Jr.
Prior to execution of the written contract, McClure was furnished a copy of the original plans and specifications and an estimate of the quantities of work to be performed and the materials required by the project engineer. A bid proposal was prepared by him, dated January 5, 1971, quoting the unit cost of each phase of the work he offered to undertake. This proposal, addressed to the project engineer, reflected a total estimated cost of $57,814.30. Subsequent to the preparation of this written proposal the plans and specifications were changed by the project engineer (with approval of the FHA) to lower the required elevation of the entire subdivision one foot. Thus the amount of excavating in preparation for the paving of streets was substantially changed from that reflected by the original plans on which McClure based his proposal.
On November 3, 1971, the project engineer advised North Development Company, Inc., in writing of the completion by McClure of the various items of the construction undertaken by him, giving a composite total of the quantities of work performed and material used in connection therewith. The total cost of each item of work was computed by the engineer on the basis of the unit cost as reflected in the bid proposal submitted by McClure. The aggregate total of all work was shown to be $73,634.90.
At this point a dispute arose between McClure and the management of Southern Erection and North Development as to the amount due McClure for performance of the work.
Southern Erection and North Development contended by the provisions of the written contract McClure agreed to perform all work necessary for a lump price of $57,814.30 and that the changes in plans and specifications had no effect on this agreement. McClure contended he bid the work on a unit price basis and that he should be paid for the quantities of work actually performed on this basis and as shown on the certification of the project engineer.
On February 25, 1972, North Development Company, Inc., as owner of the subdivision and as assignee of all rights of Southern Erection under its contract with McClure by virtue of a written assignment, brought suit against McClure seeking damages and expenses incurred because of an alleged breach of the written contract by McClure in allowing liens to be filed against the property. North Development further asked for judgment ordering cancellation of the lien created by McClure's recordation of an affidavit setting forth his performance of work for which payment had not been received. North Development alleges that in the written contract McClure agreed to waive his rights to file liens against the property on which the work was to be performed and to accept the financial responsibility of Southern Erection, the prime contractor, as sufficient to secure any claim under the contract, and further agreed to protect the property from any lien of his subcontractors or materialmen. A breach of this obligation is alleged to have occurred by the *398 filing of the lien by McClure and two other liens perfected by Braswell Industries, Inc., and Braswell Concrete Products, Inc., resulting from non-payment by McClure for materials furnished him on this project.
In answer to this action McClure denied any breach of his contractual obligations and alleges completion of the work undertaken entitling him to payment of the sum of $73,634.90, less a payment of $6,837.75. He further alleges that although the written contract provides for payment within forty-five days after completion of the work, this amount has never been paid to him. McClure further contends the provision of the contract relating to waiver of lien rights is not supported by any consideration and is thus unenforceable.
On March 21, 1972, McClure filed suit against Southern Erection Co., Inc., North Development Co., Inc., and T. W. Alley, Jr., for the balance owed him for the work performed and for recognition of his lien on the property. In this action the defendants denied his entitlement to the amount claimed and again asserted by reconventional demand claims for damages in the amount of $12,500 against McClure for the same reasons advanced in the suit previously filed by North Development Co., Inc., against McClure.
After trial on the merits of the two suits, which were consolidated for the purpose of trial, judgment was rendered in the suit brought by North Development against McClure rejecting the plaintiff's demands. Judgment was rendered in favor of McClure in his action against Southern Erection and North Development casting those defendants for judgment in solido for the sum of $61,772.06, and maintaining the lien and privilege of McClure against the subject property.
In his reasons for judgment in Suit No. 12,056, North Development Co., Inc. vs. McClure, the trial judge concisely summarized the issues and his conclusions as follows:
"The contract document sued on was prepared by plaintiff's assignor and consequently its every ambiguity must be construed against the plaintiff. Although the contract document refers to plans and specifications prepared by Sammie Craft, Engineer, they were not annexed to and made part of the contract. Upon the trial of this cause the plaintiff did not introduce the plans and specifications and it remained for the defendant to produce the list of quantities upon which the recited contract price was obviously based, the recited consideration of $57,814.30 being the exact figure quoted by the defendant for the work described in his proposal.
"The plaintiff contends that the contract price of $57,814.30 was arrived at independently and that the list of estimated quantities was used only as a guide in negotiating with the defendant. The defendant insists that his bid proposal was based upon the list of estimated quantities required, on a unit price basis. He further contends that his proposal was prepared in the office of the plaintiff, signed by him at the same time he executed the contract and made a part thereof.
"While the plaintiff maintains that this was a lump sum contract requiring the defendant to do an unspecified amount of work, it is quite evident that both the defendant and the plaintiff's engineer understood that the defendant was to be paid on the basis of unit prices for the work required of him. This was evidenced by the fact that the defendant performed far more work than called for in the list of estimated quantities without protest and by the fact that plaintiff's engineer prepared a final estimate of the work performed, based on `contract unit prices'.
"An exhaustive review of the evidence has led us to the conclusion that there was no meeting of the minds as to the cause or consideration for the contract *399 sued on. The plaintiff evidently believed that the defendant had agreed to install the required streets, curbs, sidewalks and drainage structures as well as move whatever quantity of dirt required to be moved, all at a fixed price. The defendant believed that he was to perform only the work specified in the list of estimated quantities upon which the consideration was based and that for additional quantities he would be compensated on the same unit price basis. We find therefore that there was an absence of consent as to the cause or consideration of the contract sued on and that it is thereby vitiated."
The trial judge further found that although the written contract had been vitiated for lack of consent, McClure had in fact furnished labor and materials at the request of Southern Erection which had been received and converted to the use and benefit of both Southern Erection and North Development. He further concluded the value of these services and materials had been established by the certification of the project engineer and that after deducing the amounts paid by North Development to subcontractors of McClure, there remained an amount due and owing of $61,772.06.
As there was no recorded contract between the owner and the prime contractor, in accordance with the provisions of LSA-R.S. 9:4812, McClure was recognized to have a right to a personal judgment in solido against Southern Erection and North Development for the aforementioned sum. T. W. Alley, Jr., was found not to own an interest in the property personally and demands against him were rejected.
Southern Erection and North Development have appealed suspensively from the judgment in the action brought by McClure. North Development has appealed devolutively from the judgment rejecting its demands against McClure.
The principal assignment of error is the finding of the trial judge that the written contract was vitiated by a lack of consent.
After a careful review of all evidence in the record of these cases we find no error in the findings of fact or conclusions of law arrived at by the trial court.
According to the testimony of McClure he was unaware at the time of signing the final written contract on March 18, 1971, of the change in the plans and specifications that had taken place after he had prepared his bid proposal in early January. There is no evidence in the record to refute this testimony. The project engineer did not recall having furnished McClure with a copy of the changed plans. McClure was not furnished with a new list of estimated qualities of work to accord with the new specifications. Moreover, there is no showing that Mr. Alley, Sr., or Jr., knew if McClure was fully aware of the changes in specifications at the time of final consummation of the contract document.
It is thus apparent that there was a mutual error of fact in regard to the extent of the work to be performed and the payment to be received therefor which was the principal cause of the contract. One of the requirements for a valid contract under La.C.C. Art. 1779, is the legal consent of all parties thereto. La.C.C. Art. 1819 provides that there is no consent where it has been produced by error. La.C.C. Articles 1820, 1821 and 1823 define error which will invalidate an agreement:
"Art. 1820. Kinds of error
Error, as applied to contracts, is of two kinds:
1. Error of fact;
2. Error of law;"
"Art. 1821. Error of fact
That is called error of fact, which proceeds either from ignorance of that which really exists, or from a mistaken belief in the existence of that which has none."
*400 "Art. 1823. Sufficiency of error to invalidate contract
Errors may exist as to all the circumstances and facts which relate to a contract, but it is not every error that will invalidate it. To have that effect, the error must be in some point, which was a principal cause for making the contract, and it may be either as to the motive for making the contract, to the person with whom it is made, or to the subject matter of the contract itself."
Our conclusions herein are supported by the decisions of the court in Meadors v. Cravy, 165 So.2d 546 (La.App.2d Cir. 1964); National Company v. Krider, 150 So.2d 592 (La.App.4th Cir. 1963); Pan American Production Co. v. Robichaux, 200 La. 666, 8 So.2d 635 (1942).
Even assuming there was error only on the part of McClure, the same result would obtain as unilateral error of fact is sufficient to abrogate a contract. Jefferson Truck Equipment Co. v. Guarisco Motor Co., 250 So.2d 211 (La.App.1st Cir. 1971) and cases cited therein.
Appellants take the position that should this court uphold the finding of the trial court that the contract was invalid for want of consent, then the award made by the court is excessive. Appellants argue that the basis of the award made by the court was under the equitable doctrine of quantum meruit or unjust enrichment and that at most McClure is entitled to his actual cost of labor and materials. In support of this position the case of O. J. Ward, Inc. v. Winford Co., 254 So.2d 152 (La.App.2d Cir. 1971), is cited.
The general rule on the amount of recovery allowed under the doctrine of quantum meruit is the value of the services or materials which have inured to the benefit of another. In making a determination of what is a reasonable value of the services performed, the court must look to the circumstances involved in each individual case. Haas v. Brumfield, 137 So.2d 680 (La.App.4th Cir. 1962); Swan v. Beaubouef, 206 So.2d 315 (La.App.4th Cir. 1968).
Our language in the Ward case inferring that under the doctrine of unjust enrichment a claimant is only allowed to recover actual cost is not in accord with the majority of the jurisprudence, and although it may have been appropriate under the facts of that case, we do not deem it to apply to the facts of this case. In Swan v. Beaubouef, supra, the Fourth Circuit Court of Appeal allowed a contractor to recover a reasonable profit as well as his actual cost of labor and materials in the application of the doctrine of quantum meruit.
La.C.C. Art. 1965 is the source of the doctrine of quantum meruit in this State and is intended to afford relief under appropriate circumstances in equity when there is no remedy under the general law. We believe it would be inequitable to relegate the subcontractor in this case to only actual cost of labor and material. This would in effect allow the adverse parties to enrich themselves at his expense for the amount of reasonable profit usually made by the subcontractor in return for his undertaking.
The evidence in the record leads us to the conclusion the unit prices set forth in McClure's bid proposal were considered fair and reasonable by all parties, including the project engineer. We therefore find no error in the trial judge's acceptance of these prices in determining a reasonable value of the work performed.
The invalidation of the written contract because of error renders the provisions thereof relating to waiver of lien rights and the hold harmless agreement by McClure ineffective. See National Company v. Krider, supra.
For the foregoing reasons the judgment in No. 12,056, North Development Company, Inc. vs. Glendon McClure, is affirmed at appellant's costs.
*401 In No. 12,057, Glendon McClure v. Southern Erection Company, Inc., the trial judge awarded plaintiff judgment in solido against Southern Erection and North Development for the sum of $61,772.05, together with legal interest from date of judicial demand until paid. As recovery has been allowed under the doctrine of quantum meruit, legal interest should only be allowed from date of final judgment. Johnston v. Empire Gas, Inc. of Oak Grove, 268 So.2d 333 (La.App.2d Cir., 1972); Sugar Field Oil Co. v. Carter, 214 La. 586, 38 So.2d 249 (1949); Connette v. Wright, 154 La. 1081, 98 So. 674 (1923).
For the foregoing reasons the judgment in Suit No. 12,057 is amended providing for legal interest from November 7, 1972, until paid, and as amended is affirmed at appellant's costs.