324 So.2d 502 (1975)
W. L. BRUMMETT d/b/a Brummett Well Service, Plaintiff-Appellee,
v.
HAMEL'S DAIRY, INC. and Milton Hamel, Defendants-Appellants.
No. 12758.
Court of Appeal of Louisiana, Second Circuit.
December 10, 1975.
*503 Peters, Ward & Miller by Hugh T. Ward, Shreveport, for defendants-appellants.
*504 Booth, Lockard, Jack, Pleasant & Lesage by Troy E. Bain, Shreveport, for plaintiff-appellee.
Before HALL, MARVIN and HEARD, JJ.
HALL, Judge.
This case involves a dispute as to the price charged by plaintiff, W. L. Brummett d/b/a Brummett Well Service, who drilled a water well for defendant, Hamel's Dairy, Inc., without a prior agreement as to the price to be charged. After the successful completion of the well, plaintiff presented defendant with an invoice for $12,000.00. Defendant paid plaintiff $8,000.00, but refused to pay the balance contending the charge was excessive. Plaintiff sued defendant to recover the balance of $4,000.00. After trial, the district court, pursuant to written reasons, rendered judgment against defendant in the sum of $2,983.58. Defendant appealed.
In the fall of 1970, problems developed in Hamel Dairy's existing water well and Milton Hamel, president of the dairy, contacted plaintiff, a water well driller of many years experience. Plaintiff had previously drilled three wells, two successful and one unsuccessful, for the dairy in 1965, dealing at that time with Hamel's father prior to his death.
Brummett and Hamel met and it was agreed that Brummett was to drill a water well to supply the dairy with a capacity at least equal to the existing well. No price was agreed upon in advance. Hamel testified he asked for a price but plaintiff suggested that Hamel was in a better position to bear the risk of an unsuccessful well and under this arrangement plaintiff would not give him a price in advance but would "treat him right." Brummett testified it was understood he was to bear the risk of an unsuccessful well, and that Hamel had asked him for a price but then asked him to start drilling immediately before a price could be worked up. The only way to resolve the direct conflict in the testimony as to who was to bear the risk is to conclude that there was simply no meeting of the minds on that subject.
In its written reasons for judgment, the district court found that plaintiff's cost of drilling the well including the equipment, overhead and labor amounted to $8,720.11. The court further found that plaintiff charged defendant $983.58 for equipment over and above his actual cost. The court made an award of $2,983.58 as being an equitable profit to plaintiff of approximately 34%, which the court felt reasonable in view of the high risk involved in drilling water wells, taking into consideration the overall risk of a water well driller from year to year and not the risk involved in this particular case.
On appeal, appellant specifies as error the court's finding as to plaintiff's cost, appellant contending the actual cost was considerably less. Appellant further specifies as error the consideration of the overall risk to the water well driller, contending there was practically no risk involved in this case because the well was drilled only fifteen feet from a producing well and also because, appellant contends, the risk was on the dairy not the driller. Appellant further specifies as error the awarding of legal interest from date of judicial demand, contending that in a quantum meruit case interest is only due from date of final judgment.
Plaintiff urges the correctness of the trial court's decision, contending he is entitled at least to the amount awarded by the trial court.
Both parties agree that in the absence of an agreement between the parties as to price, plaintiff is entitled to be paid for drilling the water well under principles of quantum meruit, the source of which is LSA-C.C. Art. 1965. The law applicable to this case is well summarized *505 in Swan v. Beaubouef, 206 So.2d 315 (La.App.4th Cir. 1968) in which it was held: ". . . Generally quantum meruit is based on the legal maxim that no one is no one is to enrich himself at the expense of another. . .

* * * * * *
"The theory of quantum meruit authorizes the party performing the services to receive compensation for his work, although no contractual agreement was reached with respect to price to be charged.
"The determination of this amount owed by the party receiving the benefit shall be derived from a reasonable evaluation of the services performed as adjusted to the circumstances of the individual situation. See Haase v. Brumfield, La.App., 137 So.2d 680. Thus a necessary issue to the suit involving quantum meruit is the reasonable evaluation of the services when such recovery is due and owing.

* * * * * *
"We are constrained to conclude that the trial judge erred in his determination of the amount to be recovered, and his judgment should be amended to allow recovery which takes into account normal operating expenses, depreciation, and a fair profit for the efforts of the contractor. . ." 206 So.2d 315, 317.
Plaintiff is entitled to recover his actual costs, including general overhead attributable to this project, and a reasonable profit.
Our review of the evidence convinces us that the trial court did in fact err in calculating plaintiff's actual cost. In answers to interrogatories, plaintiff submitted a detailed itemization of his costs for all materials and equipment, rig time, and profit, totaling $12,000.00. In another list prepared by plaintiff and filed into evidence, specific items of overhead are itemized. We find that plaintiff's actual out-of-pocket costs for materials and equipment, tax, and the cost of plugging the old well, was $4,826.21 (items 1 through 60 of answers to interrogatories). Plaintiff is entitled to be paid this amount for his out-of-pocket costs.
The itemized list of specific overhead items (items 63 through 68) attributable to this project, total $1,795.25. Plaintiff is entitled to be paid for these overhead items. Plaintiff's answers to interrogatories also list two items for "rig time" at a certain price per foot, totaling $1,980.00. These items, according to plaintiff's own testimony, amount to charges for general overhead and profit. To the extent that these items include overhead, they duplicate the itemized overhead charges and are not proper charges. To the extent that they constitute profit, they duplicate the general award of a fair profit and therefore should not be charged separately.
Plaintiff charged defendant a profit of $953.58 on the materials and equipment furnished. The mark-up on these items is not seriously contested and plaintiff is entitled to recover this charge.
The main difficulty in this case comes in fixing a reasonable profit. Virtually all of the experts who testified agreed that water well drilling is a high risk business and that in order to show an overall annual profit it is necessary that the contractor realize a substantial profit on each successful well. Several well-qualified experts gave their opinions as to what they considered a reasonable price for this particular well. The opinions of the experts ranged from a low of $7,500.00 to a high of $15,000.00. The testimony of the experts reveals that had this project been let out for bids the bids could be expected to vary several thousand dollars.
We have previously determined that plaintiff is entitled to be paid $4,826.21 for his out-of-pocket costs for materials, $953.58 as profit on the sale of materials and $1,795.25 for overhead attributable to this *506 project or a total of $7,575.04. We further conclude, based on the totality of the evidence, that plaintiff is entitled to be paid a fair profit of $2,000.00, in addition to the foregoing items, or total of $9,575.04. Plaintiff has already been paid $8,000.00, which means there should be judgment for $1,575.04. The judgment of the district court will be amended accordingly.
The district court awarded legal interest from date of judicial demand. In North Development Company, Inc. v. Mc-Clure, 276 So.2d 395 (La.App.2d Cir. 1973) this court held that legal interest in a suit on quantum meruit is granted only from date of final judgment, citing Johnston v. Empire Gas, Inc. of Oak Grove, 268 So.2d 333 (La.App.3d Cir. 1972); Sugar Field Oil Co. v. Carter, 214 La. 586, 38 So.2d 249 (1949); and Connette v. Wright, 154 La. 1081, 98 So. 674 (1923). In a later case, Succession of Butler, 294 So.2d 512 (La.1974), the Supreme Court held:
"We agree with the contention of defense counsel that in a suit in quantum meruit interest is not allowed from the date of judicial demand. Legal interest should be allowed from the date of final judgment. Sugar Field Oil Co. v. Carter, 214 La. 586, 38 So.2d 249 (1949); Connette v. Wright, 154 La. 1081, 98 So. 674 (1923)." 294 So.2d 512, 516.
Plaintiff argues that under LSA-C.C. Art. 1938 and Friede v. Myles Salt Co., Ltd., 177 So. 105 (La.App.Orl.1937); Pease v. Gatti, 205 La. 949, 18 So.2d 511 (1944); Culpepper v. Slater, 131 So.2d 76 (La.App.2d Cir. 1961) and Carey v. Sentell, 64 So.2d 451 (La.App.2d Cir. 1953) interest is due from the date the debt becomes due.
A debt owed under quantum merit does not become due until the amount is ascertained, which is the date of judgment. We adhere to the decision of this court in the North Development Company case and of the Supreme Court in Butler and amend the judgment of the district court to provide for legal interest from date of judgment.
For the reasons assigned, the judgment of the district court is amended and recast as follows:
It is ordered, adjudged and decreed that there be judgment herein in favor of plaintiff, W. L. Brummett, and against the defendant, Hamel's Dairy, Inc. for the full sum and amount of $1,575.04, with legal interest thereon from date of final judgment until paid, and all costs of these proceedings, including the cost of appeal.
Amended and recast.