359 So.2d 308 (1978)
Sam CAPITANO, Jr., d/b/a El-Cap Construction Company
v.
HUBER, HUNT & NICHOLS, INC. and Blount Brothers Corporation (a joint venture) and Louisiana Stadium and Exposition District.
No. 9107.
Court of Appeal of Louisiana, Fourth Circuit.
May 10, 1978.
Rehearing Denied June 13, 1978.
*310 Cecil M. Burglass, Jr., Burton G. Klein, New Orleans, for plaintiff-appellee.
Gordon, Arata, McCollam & Watters, Blake G. Arata, Andrew L. Gates, III, New Orleans, for defendant-appellant, Huber, Hunt & Nichols, Inc. and Blount Brothers Corp. (A Joint Venture).
Before GULOTTA, BEER and GARSAUD, JJ.
GULOTTA, Judge.
Defendant-general contractor for the Louisiana Superdome appeals from a $150,000.00 unjust enrichment award in favor of plaintiff-subcontractor for excavation and demolition work performed during the construction of the Dome. It is defendant's contention that plaintiff is not entitled to any recovery or, alternatively, that the award should be limited to $19,757.00 with interest from date of final judgment. In a reconventional demand, defendant claims entitlement to $270,965.00. Plaintiff has answered the appeal, seeking either 1) an increase to $781,390.00, the contract price or 2) an increase to $392,700.00 ($197,700.00 for work performed and $200,000.00 for loss of anticipated profits) plus 10% attorney's fees. We reduce the award to the sum of $93,540.00 with interest from date of final judgment but affirm the judgment in all other respects.

FACTUAL BACKGROUND
Defendant entered into negotiations with Sam Capitano in anticipation of awarding to Capitano the subcontract for excavation and demolition of the Dome Stadium site. On May 12, 1971, their negotiations were reduced to a document entitled "Rider No. 1" which was to be incorporated in a subcontract to be signed at a later date.
Rider No. 1 described in detail the work to be performed by plaintiff and set forth lump sum prices for particular phases of the job in addition to unit prices for estimated quantities of materials to be removed or placed on the job site. The total approximate subcontract price set forth was $781,390.00. The document was not signed by both parties.[1]
On May 27, 1971, defendant authorized Capitano to begin the excavation and demolition of the basement of the Swift & Company Building, one of the items of work to be performed. Plaintiff began work as directed and on August 11, 1971, subsequent to sale of the stadium bonds, he received a telegram from defendant authorizing him to proceed with other aspects of the work as outlined in Rider No. 1.
Capitano continued working on the site until September 28, 1971, when he left the job.[2] He was subsequently replaced by another excavation and demolition subcontractor. In early October, 1971, plaintiff submitted to defendant a request for payment of the sum of $192,700.00. This total was itemized in plaintiff's request as follows:

 1. Mobilization $ 4,700.00
 2. Demolition of the Swift
 Building (100% completion) 9,800.00
 3. Demolition and storage
 (70% completion) 63,000.00
 4. Excavation and grading
 (15% completionAt trial,
 plaintiff testified that the
 15% figure on the request was
 an error and should have been
 40%.) 86,800.00
 5. Excavation and disposing of
 materials25,000 yards 25,000.00
 6. Sand and extras ordered 3,400.00
 _____________
 $ 192,700.00

*311 Defendant refused payment and this litigation followed.
It is undisputed that prior to September 28, 1971, defendant had paid plaintiff a total of $25,200.00 for work performed. At issue are 1) whether a contract had been entered into between the parties and whether a breach of that agreement had taken place, and 2) if no contract existed, the amount to which plaintiff is entitled for demolition and excavation work performed.

CONTRACT
The trial court[3] rejected plaintiff's contention that a contract existed entitling plaintiff to recover the $781,390.00 or contract price. The record supports this conclusion.
Rider No. 1 provides:
"This subcontract is awarded subject to approval of the Subcontractor by the Owner and/or his representative . . . ."
The evidence is clear that the owner never approved Capitano. Further, Rider No. 1 provides that the subcontractor is to furnish a performance bond in the amount of the approximate subcontract price and to carry insurance in the same minimum limit as required of the contractor, which in this case was a $1,000,000.00/$5,000,000.00 liability policy. Plaintiff, by his own testimony, indicated that no performance bond was furnished and that the maximum amount of insurance coverage provided by him was a $100,000.00/$300,000.00 policy. Although it is true, as pointed out by plaintiff, attempts were made to modify the insurance requirements to accommodate Capitano by allowing him to provide insurance on particular phases of the job on a piecemeal basis in order to circumvent the $1,000,000.00/$5,000,000.00 requirement, no final arrangements were made and no insurance was furnished. It was during these negotiations that Capitano left the job. Under the circumstances, we conclude, as did the trial court, that ". . . Rider 1 was never reduced to a binding contract . . . ."

ACTIO DE IN REM VERSO
Plaintiff, though not performing under a contract, did, nevertheless, work on the job site pursuant to authorization by defendant. Plaintiff's claim is one in the actio de in rem verso. See Oil Purchasers, Inc. v. Kuehling, 334 So.2d 420, 425 (La. 1976).
Five prerequisites to recovery are necessary under this concept: 1) an enrichment, 2) an impoverishment, 3) a connection between the enrichment and the impoverishment, 4) an absence of "justification" or "cause" for the enrichment and impoverishment, and 5) plaintiff's lack of any other remedy at law. Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967); Edmonston v. A-Second Mortgage Company of Slidell, Inc., 289 So.2d 116 (La.1974). Recovery is based upon the principle that one who is unjustly enriched at the expense of another must make restitution of the amount of the enrichment or in some cases the amount of impoverishment. Minyard v. Curtis Products, Inc., supra. See also Custom Builders & Supply Inc. v. Revels, 310 So.2d 862 (La.App.3d Cir. 1975). In an actio de in rem verso case, as in any other, the burden is upon plaintiff to satisfy these prerequisites.
The record is clear that defendant was enriched as a result of plaintiff's work. Huber-Hunt billed to and received from the Dome owners a total of $255,000.00 for excavation and demolition work through October 31, 1971. A part of this work was performed by plaintiff. Also clear is the fact that plaintiff was impoverished. The undisputed testimony of the demolition subcontractor *312 who succeeded plaintiff on the job was that Capitano had incurred unpaid equipment and labor costs in the sum of $64,162.32. Because no contract or valid juridical act existed, there is an absence of "justification" or "cause". See Edmonston v. A-Second Mortgage Company of Slidell, Inc., supra. Furthermore, plaintiff has no other legal remedy. The prerequisites for establishing entitlement under the actio de in rem verso have been met in this case.
More perplexing, however, is the amount of entitlement. The commissioner's recommendation, adopted by the trial judge, is the sum of $150,000.00. We have examined the lump sum and unit prices set forth in Rider No. 1, plaintiff's request for payment, defendant's receipt of payment from the Dome owners, the testimony of the witnesses and the factual findings of the commissioner in an effort to ascertain the components of the total award, but we are unable to explain the figure reached by the trial court.[4] While we find no support in the record for the $150,000.00 award, there exists evidentiary support for the trial court's factual conclusions which do support a substantial award in favor of plaintiff.
Although we conclude no contract came into existence, nevertheless, the agreed upon amounts for payment, as set forth in Rider No. 1, in anticipation of a contract (provided other conditions had been met), serve as a fair value of the work. See North Development Company, Inc. v. McClure, 276 So.2d 395 (La.App.2d Cir. 1973).
One aspect of plaintiff's excavation and demolition work involved removal of the foundations of the Swift Building, a structure which had previously existed on the construction site, for an agreed amount of $35,000.00. In reasons for judgment, the commissioner stated that the $150,000.00 award "includes the balance due . . . on the Swift Building". The $25,200.00 amount paid to plaintiff by defendant was for demolition work on the Swift Building and a balance of $9,800.00 remained. According to defendant's project manager, only 80-85% of the Swift Building work was completed by plaintiff. Although plaintiff stated that he had virtually finished the job, his testimony is clear that he completed 98%. The trial court's award, which includes the sum of $9,800.00, represents the full balance owed based on 100% completion. Plaintiff is bound by his own testimony, however, and accordingly is entitled only to $9,100.00, representing 98% completion of the Swift Building work (item # 2 on plaintiff's list).
Another part of plaintiff's claim (item # 3 on plaintiff's list) involved the demolition and removal of the streets, curbs, sidewalks, pavements and building slabs on the construction site; the removal and storage of granite pavement blocks; and the demolition and removal of underground obstructions to avoid interference with pile driving and construction. The commissioner found that the construction site was a "mass of concrete, asphalt and cobblestones" when plaintiff commenced the job. He further found that plaintiff "took out 80% of this surface area", cleared areas to permit pile driving operations and excavated and relocated cobblestones. This factual finding is supported by the testimony of plaintiff and two of his employees.
*313 The estimation of completion of this aspect of the work given by these witnesses ranged from 70% to 85%. Also, as pointed out by the commissioner, streets and curbs are not visible in progress photographs of the site taken in early October, 1971. Though the excavation subcontractor who succeeded plaintiff on the job testified that a "large percentage" of the streets were intact in early October, 1971, and though defendant's project engineer estimated that only 10% of this phase of the job had been completed by plaintiff, the trial judge (based on the commissioner's recommendation) made a credibility determination in plaintiff's favor. His factual finding based on that credibility determination will not be disturbed.
The anticipated cost for this aspect of the work amounts to $90,000.00 (as set forth in Rider No. 1). Based upon the 80% completion of this phase of plaintiff's work, we compute plaintiff is entitled to an additional $72,000.00.
A third part of plaintiff's claim is for excavation and disposal, off site, of excavated materials which could not be reused on the job (item # 5 on plaintiff's list). Rider No. 1 sets forth the unit prices of $.20 per cubic yard for excavation and $.80 per cubic yard for disposal of these materials. Plaintiff testified that he had removed 75,000 cubic yards of fill from the Dome site and had sold it at $1.00 per cubic yard. His testimony was supported by an independent witness who stated that he purchased 23,000 cubic yards of material from plaintiff during August and September, 1971. According to plaintiff, he is entitled to $25,000.00 for this part of the job. Defendant, on the other hand, claims plaintiff became "enriched" by $75,000.00 from the sale of the excavated material and his entitlement to recovery should be reduced by that amount.
We agree with defendant's contention. Any amount to which plaintiff is entitled under the actio de in rem verso must be reduced by the amount received from the sale of the excavated materials. The amount received by plaintiff reduces to that extent the impoverishment sustained. We find no merit to plaintiff's claim that once the materials were removed, they became Capitano's property to be disposed of as he saw fit. Plaintiff's argument may have validity if we had determined that a contract existed. However, having concluded plaintiff is entitled to recovery in the actio de in rem verso, the amount Capitano received from the sale of excavated materials is relevant in the determination of the amount owed.
In this respect, the uncontradicted testimony is that 75,000 cubic yards of materials were removed. According to Rider No. 1, plaintiff is entitled to recover $1.00 per cubic yard or $75,000.00. Accordingly, plaintiff's entitlement to an award for this amount ($75,000.00) is offset by the equal amount derived from the sale of the excavated materials. We therefore do not award any amount to plaintiff for fill material excavated and removed from the job site.
Plaintiff also testified that he had hauled shells and sand onto the site, had cleared an area and had constructed a reviewing stand for dignitaries attending ceremonies in connection with drilling of the first piling. These services were not included in the Rider. These costs are included in plaintiff's claim under the headings "Mobilization" in the sum of $4,700.00 and "Sand and extras" in the sum of $3,400.00 (items # 1 and 6 on plaintiff's list). The trial judge concluded plaintiff had done the work claimed for construction of the reviewing stand. The record supports his conclusion. We conclude that plaintiff is entitled to an additional $8,100.00 for this phase of the work.
The final basis for plaintiff's unjust enrichment claim is for excavation and grading (item # 4 on plaintiff's list). This phase of the work in Rider No. 1 bears a lump sum price of $217,000.00 and is described, inter alia, as excavation for pile caps. This procedure, as described in the record, involves the digging of a hole around a cluster of pilings to permit the *314 pouring of a cement "cap" which is to serve as a foundation for the Dome. In his request for payment, plaintiff claims entitlement to $86,800.00 for this part of the work. Though it is undisputed that only 12 pile caps were poured during plaintiff's presence on the site, plaintiff testified that he excavated a total of 40 cavities in preparation for additional pourings.
According to the testimony of defendant's project engineer, however, pile caps are not excavated very far in advance of the actual pouring of the cement. His testimony in this respect is supported by language in Rider No. 1 which provides:
"* * * The nature of the soil is such that the time lapse between excavating, driving piling, and pouring concrete shall be kept at a minimum."
The trial judge did not address, in his reasons, this particular claim for payment. Under the circumstances, we consider the evidence without according the benefit of the manifest error rule.
If plaintiff's request for payment for this part of the work is accepted ($86,800.00), it must be concluded that he completed 40% (as claimed) of the total excavation and grading price on Rider No. 1 ($217,000.00). Such a request cannot be justified in view of the fact that plaintiff only worked on the site (other than the Swift Building) from August 11 until September 28; that only 12 pile caps were poured when plaintiff left the job; and that the excavation subcontractor who succeeded plaintiff continued working on the job for over two years. Huber-Hunt's project engineer estimated that plaintiff had completed 2% of this part of the job. His testimony was substantially corroborated by an inspector for the architect, Curtis and Davis. According to this witness, Capitano had excavated for 14 of the 800 pile caps contemplated in the construction of the Stadium. This represents approximately 1.75% completion of this aspect of the work contemplated in Rider No. 1 at a sum of $217,000.00. Accepting the 2% estimate, we conclude that plaintiff is entitled to $4,340.00, representing excavation of the 12 (or 14) pile caps and the digging of a trench.
Accordingly, we itemize plaintiff's entitlement as follows:

 1. Remainder due for demolition
 of the Swift Building
 (98% completion) $ 9,100.00
 2. Demolition of streets, etc.
 and storage of granite
 blocks (80% completion) 72,000.00
 3. Mobilization, sand and
 extras 8,100.00
 4. Excavation and grading
 (2% completion) 4,340.00
 _________
 $ 93,540.00

and arrive at a total award of $93,540.00.
We find merit to defendant's contention that the award should bear interest not from the date of judicial demand but from the date of final judgment. Plaintiff's suit for the value of his services is an unliquidated claim and interest can run on the award only from the date of the final judgment. Succession of Butler, 294 So.2d 512, 516 (La.1974); Sugar Field Oil Co. v. Carter, 214 La. 586, 38 So.2d 249 (1948); Liwerant v. Elwin Corporation, 206 So.2d 766 (La.App.4th Cir. 1968). Accordingly, the judgment is to bear judicial interest from the date of its finality.
We are in accord, however, with the trial judge's dismissal of defendant's reconventional demand for $270,965.00. Defendant alleges as the basis for this demand that should the court find the existence of a contract between the parties, plaintiff breached the agreement by abandoning the job and defendant consequently suffered damage when it entered into a second subcontract with another excavator who succeeded plaintiff at a subcontract price $270,965.00 higher than plaintiff's price. Defendant also contends that additional costs resulting from plaintiff's default offset any enrichment received by defendant through plaintiff's work.
We find no merit to defendant's contention on his reconventional demand based on plaintiff's alleged breach of contract. We have concluded no contract came into existence. Accordingly, defendant *315 cannot recover based on plaintiff's breach of a nonexistent contract. By the same token, because defendant contracted with a second excavation subcontractor, at a cost in excess of the contemplated original contract price (between plaintiff and defendant), plaintiff cannot be denied payment for services rendered. The record is clear that services were performed by Capitano for which he is entitled to payment under the actio de in rem verso. Merely because defendant may have entered into a subsequent contract at a higher cost (which may or may not have been financially wise), cannot serve as the basis for denying plaintiff's unjust enrichment claim. Under the circumstances, we conclude the trial judge properly dismissed defendant's reconventional demand.
Accordingly, the judgment in favor of plaintiff in the sum of $150,000.00 is amended and reduced to the sum of $93,540.00 with interest from the date of judgment until paid. As amended, the judgment is affirmed.
AMENDED AND AFFIRMED.
NOTES
[1] Plaintiff signed the document but defendant did not.
[2] The exact cause of plaintiff's leaving the job is disputed. According to defendant, plaintiff asked to be relieved of the job because he was unable to complete it. Plaintiff, on the other hand, testified that his work was satisfactory, that he was capable of completing the job, but that defendant's representatives told him that he had to meet a liability insurance requirement of $1,000,000.00/$5,000,000.00 or leave the job. Plaintiff was unable to meet this requirement and discontinued work on September 28, 1971.
[3] This matter was heard by a commissioner and his recommendations were adopted by the trial judge.
[4] Plaintiff suggests that the commissioner's award can be explained by reference to the amounts received by defendant from the Dome owners in connection with the excavation and demolition work. Defendant's invoices through October 31, 1971 indicate defendant received $255,000.00 for demolition, excavation and backfill or 19% of the total price of $1,330,000.00 for excavation, demolition and backfill as set forth in the general contract. Plaintiff points out that 19% of the Rider No. 1 subcontract price of $781,390.00 is approximately $147,000.00, a figure close to the commissioner's recommendation.

We reject this argument for the reason that the total general contract price includes defendant's profit and expenses which are not relevant to the approximate subcontract price in Rider No. 1. A simple computation based on a percentage of the general contract price paid by the Dome owners cannot serve as a basis for calculating the value of plaintiff's services or the extent of his impoverishment.